Argued September 8, reversed December 12, 1975, petition
for rehearing denied January 13, 1976

# W. L. MAY, CO., INC., *Respondent-Cross-Appellant,*
## *v.* PHILCO-FORD CORPORATION, *Appellant.*

543 P2d 283

*Floyd Hint*on of Deich, Deich and Hinton, Portland, argued the cause and filed briefs for appellant.

*N. Robert Stoll,* Portland, argued the cause and filed a brief for respondent-cross-appellant, and a reply brief to amicus curiae General Electric Company.

Ernest Bonyhadi and David Kaye of Rives, Bonyhadi & Drummond, Portland, filed a brief for General Electric Company as amicus curiae. With them on the brief was James T. Hughes, Division Counsel, Erie, Pennsylvania.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

HOWELL, J.

This is an action at law for damages arising out of the termination of a distributorship contract between the plaintiff, W. L. May Co., Inc., and the defendant, Philco-Ford Corporation. It was tried before the circuit court sitting without a jury. Defendant appeals from a judgment for plaintiff for $6,500.

Plaintiff May Co., a wholesale parts distributor located in Portland, distributes the appliance parts of approximately 40 manufacturers to local servicemen and retail dealers. Plaintiff entered into a distributorship agreement with Philco in July, 1962. The agreement provided that either party could terminate at any time upon written notice of 90 days. Under the agreement, plaintiff was required to carry an "adequate" inventory of Philco parts. The agreement also provided:

"* * * * *.

"15. Upon termination of this Agreement Distributor shall cease to be an authorized Philco Distributor and:

"* * * * *.

"(c) Distributor will resell and deliver to Philco upon demand, free and clear of all liens and encumbrances, such Philco Products and materials bearing Philco's name as Philco shall elect to repurchase, at a mutually agreed price but not in excess of Philco's current distributor price for said products and materials."

The parties operated under this contract until April 1, 1971, at which time Philco gave plaintiff written notice of termination effective July 1, 1971. The termination was due to a change in Philco's parts distribution policy, and all independent Philco distributors were terminated at that time.

Following notice of termination, Philco notified plaintiff that it did not intend to demand repurchase of any of its products which might remain after termination. Philco contended that the 90-day notice period allowed plaintiff "adequate time to sell profitably" the Philco parts which remained on hand. However, plaintiff was unable to market most of its remaining Philco inventory during the 90-day period or thereafter. Approximately one year later, plain-

tiff requested that Philco buy back the remaining Philco inventory because it was impossible for plaintiff to dispose of it. Philco refused.

■ Plaintiff's complaint alleged that the termination provisions of the contract were unconscionable and sought reimbursement for its damages arising out of the termination. More specifically, plaintiff alleged that the agreement (a) gave Philco an option to cancel on 90 days' notice, with or without cause, (b) required plaintiff to maintain an adequate inventory, and (c) gave Philco an option to refuse to repurchase the inventory upon termination. Plaintiff also alleged that Philco, having terminated the agreement, refused to repurchase the Philco inventory, and that plaintiff was thereafter unable to dispose of its remaining Philco products. Plaintiff's complaint argued that the "totality of circumstances" rendered the termination provisions unconscionable within the meaning of Article 2, § 302, of the Uniform Commercial Code.[①] Plaintiff sought damages in the amount of the value of the remaining Philco inventory.

The trial court found, as a matter of law, that the repurchase election provision of the contract was unconscionable as of the time of the formation of the contract. The court also concluded that there had been a breach of an implied covenant of good faith and fair dealing when Philco exercised its elec-

[①] ORS 72.3020.

Article 26 of the distributorship agreement provided that the agreement was to be construed in accordance with the laws of Pennsylvania. At trial, defendant contended that the laws of Pennsylvania governed the rights of the parties under the contract. Plaintiff argued that, although Pennsylvania law might control, the Oregon and Pennsylvania versions of the Uniform Commercial Code were identical with respect to the provisions relevant to this case. Since we have found nothing in the law of Pennsylvania which conflicts with our interpretation of these provisions, we need not decide which law would control in the event of such a conflict.

tion not to repurchase at the time of termination. The court then awarded plaintiff $6,500 in damages for breach of the implied covenant.

Defendant contends (a) that the termination provision granting Philco an election to repurchase was not unconscionable, (b) that damages cannot properly be awarded on a theory of unconscionability, and (c) that a breach of contract was not alleged in the complaint and, therefore, an award of damages for breach of an implied obligation of good faith was improper.

Section 2-302 of the Uniform Commercial Code provides as follows:

"§ 2-302. Unconscionable Contract or Clause

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

Unconscionability is a legal doctrine currently undergoing a rapid evolution. Most parties who have successfully asserted it in the past have been consumers and, frequently, have also been poor or otherwise disadvantaged. Courts have generally not been receptive to pleas of unconscionability by one merchant against another except in cases involving damage provisions or warranty disclaimers. *See County Asphalt Inc. v. Lewis Welding & Engineering Corp.,*

323 F Supp 1300, 1308 (SD NY 1970), *aff'd* 444 F2d 372 (2d Cir), *cert. denied* 404 US 939, 92 S Ct 272, 30 L Ed 2d 252 (1971); J. White & R. Summers, *The Uniform Commercial Code* 114-115 (1972). Normally, the doctrine is asserted as an affirmative defense, and it does not appear that it was originally intended as a basis for damage recovery. White & Summers, supra at 116.

■ It is clear from the language of § 2-302 that unconscionability is an issue of law to be decided by the court, and that the party asserting unconscionability must demonstrate that the clause in question was unconscionable at the time the contract was made. *See Sinkoff Beverage Co. v. Jos. Schlitz Brewing Co.*, 51 Misc 2d 446, 273 NYS2d 364, 3 UCC Rep 733 (S Ct 1966); 1 Anderson, Uniform Commercial Code 406-07, §§ 2-302:20, 2-302:22 (2d ed 1970). Although the Code itself does not define "unconscionability," the official comment to § 2-302 suggests the following standard:

> " * * * *The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.* * * * The principle is one of the prevention of oppression and unfair surprise (Cf. Campbell Soup Co. v. Wentz, 172 F.2d 80, 3d Cir. 1948) and not of disturbance of allocation of risks because of superior bargaining power." Uniform Commercial Code § 2-302, Comment 1. (Emphasis added.)

■■ Thus, in determining whether the substantive contract provisions of a commercial contract are unconscionable, we look to the circumstances existing at the time of the execution of the contract and examine the challenged provisions in the light of both

the general commercial background and the special commercial needs of the particular trade involved. *See Division of Triple T Service, Inc. v. Mobil Oil Corp.,* 60 Misc 2d 720, 304 NYS2d 191, *aff'd* 34 App Div 2d 618, 311 NYS2d 961 (1969). In order to prove the unconscionableness of the termination provisions of a contract between merchants, it must be shown that the terms of the agreement bear no reasonable relation to the business risks involved and are so one-sided as to be oppressive. *See Central Ohio Co-op. Milk Producers Inc. v. Rowland,* 29 Ohio App 2d 236, 281 NE2d 42 (1972).

█ We do not feel that plaintiff has shown that the repurchase provision was unconscionable within the meaning of § 2-302 at the time of the formation of the contract. Plaintiff has not shown that Philco's reasons for reserving a repurchase election in its distributorship agreements were not reasonably related to the business risks involved and to Philco's reasonable commercial interests at the time of eventual termination. Although Philco presented no evidence to explain its inclusion of the repurchase election, we are not persuaded that it is unreasonable per se for a manufacturer to reserve the right to refuse to re-purchase at least portions of a distributor's inventory upon termination. It may be that Philco was able to insist upon this particular allocation of risks only because of its superior bargaining power. However, under the Code, a bona fide allocation of risks will not be disturbed merely because one party had a superior bargaining position. *See* UCC § 2-302, Comment 1. It may also be noted that both parties to this particular contract were sophisticated business people. This is clearly not the case of an innocent consumer who has unsuspectingly signed an adhesion contract. *Compare Williams v. Walker-Thomas Furniture Co.,* 350 F2d 445, 2 UCC Rep 955 (DC Cir

1965). *See also,* Leff, *Unconscionability and the Code —The Emperor's New Clause,* 115 Pa L Rev 485, 489-508 (1967).

■ Similarly, we do not feel that the repurchase provision was unduly one-sided or oppressive. Although on its face that provision appears to be unqualified, in effect any exercise of the repurchase election by Philco would have been restricted by its obligation of good faith. Under the Uniform Commercial Code, a covenant of "good faith" is implied in every agreement. UCC § 1-203; ORS 71.2030. Section 2-103(1)(b) further provides that " 'Good faith,' in the case of a merchant, means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." ORS 72.1030(1)(b). *See also* UCC § 1-203, Official Comment. Under § 2-103(1)(b), Philco was required to exercise its repurchase election in an honest and commercially reasonable manner. So limited, the repurchase provision was not unduly one-sided and did not purport to authorize oppressive behavior. *See generally,* Farnsworth, *Good Faith Performance and Commercial Reasonableness Under the Uniform Commercial Code,* 30 U Chi L Rev 666 (1963).

Thus, it is apparent that, *at the time of the formation of the contract,* the repurchase election provision was not unconscionable within the meaning of § 2-302 of the Uniform Commercial Code.[2] This con-

---

[2] Our resolution of the unconscionability issue makes it unnecessary for us to decide the questions raised by amicus curiae, General Electric Co., as to whether § 2-302 can properly be used offensively, and whether an award of damages might ever be awarded on the basis of a finding of unconscionability under § 2-302. *See* 1 Anderson, Uniform Commercial Code 409, § 2-302:24 (2d ed 1970); J. White & R. Summers, The Uniform Commercial Code 116, § 4-2 (1972); Braucher, *The Unconscionable Contract or Term,* 31 U Pitt L Rev 337, 345 (1970). *See also* Rossotti Litho. Corp. v. Townsend, 50 Pa D & C 2d 451, 454 (1970).

clusion, however, brings us to a more difficult issue—
whether the trial court's award of damages for Phil-
co's breach of the implied covenant of good faith
when exercising the repurchase election *at the time
of termination* should be sustained.

■ Apparently, in preparing its case, plaintiff as-
sumed that damages could be recovered for Philco's
conduct at the time of termination only after an
initial finding of unconscionability at the time the con-
tract was formed. Correspondingly, plaintiff's com-
plaint, trial memorandum and appellate brief all em-
phasize the alleged unconscionability of the repurchase
election. However, proof that the manner in which the
repurchase election was exercised at the time of ter-
mination amounted to a breach of Philco's implied
obligation of good faith and fair dealing would have
been an independent basis for a recovery of damages.
Since the trial court found a breach of the implied
covenant, we must consider whether plaintiff's com-
plaint and the manner in which the case was presented
support the judgment of the trial court in awarding
plaintiff damages for breach of the implied covenant
of good faith and fair dealing.

Both plaintiff's pleading and the trial itself in-
dicate some confusion as to the theory upon which
plaintiff's case was being presented to the trial court.
Contrary to the general rule that the doctrine of un-
conscionability is normally used defensively, the
plaintiff's complaint sought damages arising out of
the termination on the basis that "the totality of cir-
cumstances renders the termination provisions of the
agreement unconscionable." The complaint further
alleged that the "value" of the residual inventory was
$6,500 and asked for judgment against defendant for
that amount. No breach of contract was alleged.

At the start of the trial, the trial court and both

counsel apparently agreed that the issue was the alleged unconscionability of the contract and not a breach of covenant. The following colloquy occurred:

"THE COURT: I might make one further comment along these lines. I don't even understand your pleading as being a pleading that Philco breached the contract. There is no question of a breach on either side.

"MR. STOLL: No, I don't think anyone is raising that, Your Honor.

"THE COURT: No.

"MR. HINTON: Your Honor, I didn't go into an opening statement but you can't move against the prayer. They asked for damages in there so I look at the complaint and it is talking about unconscionability and that's the case that I think we are trying.

"THE COURT: Right. That's precisely what I just tried to say. There is no question of a breach by either party."

Later in the trial the defendant objected to evidence of damages on the grounds that no breach of contract had been pleaded. However, at the close of the trial plaintiff, adopting a suggestion made by the trial court, argued that the evidence demonstrated a breach of an implied covenant of good faith and fair dealing. Moreover, plaintiff, although alleging in its complaint that the "value" of the residual inventory was $6,500, eventually contended that the value was nil and that plaintiff should recover its cost of the inventory. The court found that the contract was unconscionable and that defendant had breached the implied covenant of fair dealing, and awarded plaintiff damages in the amount of $6,500.

■ We believe that neither plaintiff's complaint nor the theory under which this case was tried supports a finding for plaintiff based on a breach of the implied

covenant of good faith and fair dealing. Consequently, plaintiff is not entitled to recover either the "value" of the remaining Philco inventory or its cost to plaintiff.

Reversed with directions to enter a judgment for defendant.