In the Matter of the ESTATE OF Uber FREDERICK, Deceased.

W. T. FULKERSON, Appellant (Petitioner below),

v.

Mrs. Charles V. REESE, Appellee (Respondent below).

W. T. FULKERSON, Appellant (Plaintiff below),

v.

Cherie REESE, a/k/a Mrs. Charles V. Reese, Individually and as Administratrix of the Estate of Uber Frederick, a/k/a Uber H. Frederick, Deceased, Bettye Yusievicz, Douglas Frederick, Marie Jewett, Charles Frederick, Gay Baalhorn, Alan Lou Frederick, Roger R. Frederick, and Mildred F. Piovarcsik, Appellees (Defendants below).

Nos. 5029, 5117.

Supreme Court of Wyoming.

Aug. 15, 1979.

Daniel J. Morgan, of Morgan & Brorby, Gillette, and Tom. C. Toner, of Redle, Yonkee & Arney, Sheridan, for appellant.

Thomas E. Lubnau, Gillette, and Wm. R. Jones and W. H. Vines, of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

THOMAS, Justice.

## OPINION OF THE COURT IN CASE NO. 5029

In the Probate Court in and for Campbell County the appellant, W. F. Fulkerson, sought specific performance of his right to purchase a filling station pursuant to an option contained in a lease of the premises which lease had been assigned to him. The probate court held that the lease, and specifically the option to purchase, were unconscionable, and accordingly it denied the remedy that Fulkerson sought. The sole issue for resolution is whether as a matter of law the lease, and particularly the option, are unconscionable. We conclude that they are not, and we will reverse the probate court with instructions to enter the appropriate order authorizing and directing the administratrix to execute a conveyance of the property to Fulkerson.

In March of 1957 Mildred T. Frederick and Uber H. Frederick executed a lease of property, the record title to which then was in Mildred T. Frederick, to Standard Oil Company. The lease was on a form which was the standard agreement in wide use by Standard Oil Company at that time, and which was entered into by more than 2,000 individuals, in separate instances, with Standard Oil Company. Prior to executing the lease the Fredericks sought and received the advice of an attorney concerning the execution of the agreement.

Pursuant to the lease the Fredericks agreed to construct and equip a service station building to cost not less than $22,-400. This was done and the ten-year initial term of the lease commenced to run in August of 1957. The lease provided that upon 60 days' written notice prior to the expiration of the original term or any extension the lessee could extend the lease but for not more two successive five-year periods. The rental during the initial term and any extensions of the lease was to be $250 per month. Standard Oil Company, which later became Amoco Oil Company, did exercise its right to extend the lease for the two successive five-year extensions.

During the period of the lease as extended the Fredericks executed a warranty deed which created a tenancy by the entireties between them in the filling station property. Upon the death of Mildred Frederick, Uber Frederick became the sole owner of the property by recording an affidavit to establish rights of survivorship in the office of the County Clerk of Campbell County. In the same year Amoco Oil Company sold, assigned and transferred to W. T. Fulkerson all of its rights in the lease. On or

about June 16, 1977, Fulkerson sent to Uber H. Frederick notification of his desire to exercise the option to purchase the premises. On July 8, 1977, Uber Frederick died, and Mrs. Charles V. Reese was appointed administratrix of his estate. Relying upon § 2–166, W.S.1957 (now § 2–5–801, W.S. 1977)[1], Fulkerson petitioned for specific performance of the right to purchase the property as set forth in the lease. The paragraph in question provides as follows:

"9. Lessee shall have, and is hereby given, the option of purchasing said premises, buildings, fixtures, equipment, machinery and appliances included in this lease, for the sum of *Forty Five Thousand ____ 00/100* DOLLARS ($45,000.00), provided Lessee shall give Lessor notice in writing of its election to exercise said option of purchase at least thirty (30) days prior to the expiration of this lease, or at least thirty (30) days prior to the expiration of any extension period, if this lease be extended, it being understood that in no event may this option be exercised prior to *31st March 1967*. If any part of the demised premises shall be taken by right of eminent domain or by any conveyance in lieu thereof or in connection therewith, the purchase price set forth herein, if the purchase option is exercised, shall be reduced in the same proportion that the area immediately prior to such taking is reduced by the taking. It is further understood that if the Lessor or the Lessor's heirs, executors, grantees, or assigns, or successors, or assigns at any time during the term of this lease or any extension thereof, receives a bona fide offer to purchase said premises or any property which includes the premises, and said buildings, fixtures, equipment, machinery and appliances and desires to sell said premises, buildings, fixtures, equipment, machinery and appliances, or any part thereof under the terms of said offer, Lessor agrees to give Lessee thirty (30) days notice in writing of such bona fide offer, setting forth the name and address of the proposed purchaser who has made the offer, the amount of the proposed purchase price, and all other terms and conditions of such offer, and the Lessee shall have the first option to purchase the demised premises by giving written notice to the Lessor of its intention to purchase within said thirty (30) day period at the same price and on the same terms of any such proposal, it being understood that in the event Lessee does not give notice of its intention to exercise its option to purchase said premises within said period, this Lease and all of its terms and conditions shall nevertheless remain in full force and effect and the Lessor and any purchaser or purchasers of the demised premises shall be bound thereby, and in the event said premises are not sold for any reason pursuant to the bona fide offer set forth in the notice, the Lessee shall have, upon the same conditions of notice, the continuing first option to purchase the said premises upon the terms of any subsequent bona fide offer or offers to purchase.

"UBER H. FREDERICK, husband of Lessor, joins in these options of purchase and agrees, in the event of the exercise of either of said options by Lessee, to join said Lessor in the execution of a proper deed of conveyance; and Lessor agrees that if either of said options is exercised, he will convey a merchantable title to said real estate by good and sufficient warranty deed, with release of dower, homestead and other rights of his wife, and free from all incumbrances whatsoever, and will furnish a merchantable abstract showing merchantable title of record to said land in said Lessor, free from all liens and incumbrances, brought down to the date of conveyance. The Lessee shall have a reasonable time after receipt

1. § *2–5–801*:

"When a person who is bound by contract in writing to convey any real estate dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance, the court or judge may make an order authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto."

of said abstract in which to complete an examination thereof, and if such examination discloses objections to the title, the Lessor shall have a reasonable time in which to cure such defects."

The petition was contested by objections in writing in accordance with the procedure now found in §§ 2-5-802 and 2-5-803, W.S. 1977. The grounds set forth in the objection which was filed are that the lease was unconscionable, and furthermore that it had been terminated and converted into a month-to-month tenancy because of the failure of the lessee strictly to comply with the provisions of the option agreement.

The matter then was heard by the probate court upon a stipulation of facts. In addition a second stipulation was filed to the effect that the estate and all of the heirs had appeared and were represented by counsel so that the matter could be determined to actually have been tried in the district court with an escape clause authorizing 30 days for Fulkerson to file an action in the district court if the agreed disposition were interpreted as an attempt to confer jurisdiction and held for naught. There then was entered an Order and Judgment purporting to be a disposition in the probate court and also a final judgment of a civil action in the district court in which the court denied specific performance upon the ground that the contract relied upon was unconscionable. The court specifically found that there had been no failure by the lessee to comply with the terms of the lease and that any slight deviation still amounted to substantial compliance. In addition the court made the following finding with respect to unconscionability:

"(7) The Court finds that the lease and option in question herein was unconscionable when considered as a whole due to the following reasons:

"(a) That the lease was for a period of ten (10) years with two five (5) year options at a fixed rental of Two Hundred Fifty ($250.00) Dollars a month for the entire twenty (20) year period;

"(b) That the entire period of time covered by the lease was in an inflationary economy;

"(c) That by the terms of the lease, the Lessors were required during the entire twenty (20) year period to keep the lease to [sic] premises in good repair;

"(d) The Lessors were required to pay all taxes and assessments on the property during the twenty (20) year period;

"(e) That the Lessee could assign the lease and option to buy at any time during the twenty (20) year period without consent of the Lessor;

"(f) That the Lessee was entitled to erect any fixtures or other items they deemed necessary;

"(g) That the Lessee could withdraw and cancel the lease with ten (10) days notice in the event that the Lessee or its assignees or sub-lessees were unable to obtain from the municipal or public authorities any permit or license necessary for the operation of a gasoline station or in case any such permit or license, if obtained, be afterward revoked without the fault of the one so obtaining it;

"(h) That the Lessee had the right to cancel the lease within a ten (10) day notice if the use of the premises for a gasoline station be restrained or injoined [sic] by judicial process;

"(i) That the lease, which was entered into by the parties, was a standard form lease prepared by the Lessee, the assignor of the Petitioner;

"(j) That the provisions in the lease for the exercise of the right of first refusal as set forth in Paragraph No. 9 in said lease operates to the extreme disadvantage of the Lessor;

"(k) That even if an offer for purchase of the premises concerned in the lease were made to the Lessor and the Lessee failed to exercise its right of purchase under the right of first refusal, the Lessor could continue with the fixed payments for the entire twenty (20) year period regardless of what price was offered to the Lessor;

"(*l*) That Paragraph No. 9 would operate to discourage any good faith offers during the twenty (20) year period due to the fact that the Lessee would have the right to continue during the twenty (20) year period at a rental of Two Hundred Fifty ($250.00) Dollars a month for the entire period;

"(m) That the entire contract is drawn very heavily in favor of the draftor, in this case, the Lessee and its assignor the Petitioner in this action, and the Court finds that the Lease and option taken as a whole is unconscionable."

■ In this appeal from the judgment and order, Fulkerson first challenges the jurisdiction of the court to purport to enter a judgment on the merits of a civil action in the district court. The appellee resists that contention, arguing that the appellant stipulated to such a procedure and therefore he cannot contend now that the jurisdiction is invalid. With respect to these arguments this court said in *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073, 1074 (1924):

"While in this state the district court is the court of general jurisdiction, and the same court has by the Constitution (section 10, art. 5) jurisdiction 'of all matters of probate,' yet, in the exercise of its probate powers, its jurisdiction is limited and special, and when its acts in probate are without the limits of the special jurisdiction conferred, they have no binding effect 'even upon those who have invoked its authority.' *In re Black's Estate*, 30 Wyo. 55, 216 P. 1059, 1063. * * *"

This rule has not been changed and there are valid reasons for adhering to it. Consequently we consider the attempt by the parties and the district court to resolve this matter as a civil action in the district court void and of no effect. We will treat with it as a disposition by the probate court under the statutory procedure.

In that regard Fulkerson states the issues as follows:

"II. PURCHASE OPTIONS IN SERVICE STATION LEASES HAVE BEEN CONSISTENTLY UPHELD AGAINST ALLEGATIONS OF UNCONSCIONABILITY. THERE WERE NO PROCEDURAL ABUSES IN OBTAINING THE LEASE OR SUBSTANTIVE ABUSES IN THE LEASE PROVISIONS WHICH JUSTIFY A FINDING OF UNCONSCIONABILITY.

"III. WHERE A PURCHASE OPTION IS NOT UNCONSCIONABLE OR OVERREACHING, THE APPELLANT IS ENTITLED TO SPECIFIC PERFORMANCE AS A MATTER OF COURSE, AND THE INCREASE IN VALUE OF THE PROPERTY BETWEEN THE DATE OF THE LEASE AND THE DATE OF THE EXERCISE OF THE OPTION IS NOT A JUSTIFICATION FOR DENYING SPECIFIC PERFORMANCE."

■ In accordance with the statutory procedures, if the probate judge is satisfied that the petitioner is entitled to a conveyance of the real estate described in the petition an order authorizing and directing the administratrix to execute a conveyance thereof must be made and entered on the journal of the court. Section 2–169, W.S. 1957 (now § 2–5–804, W.S.1977).[2] Conversely, if upon hearing the probate judge finds the right of the petitioner to have specific performance doubtful, he must dismiss the petition without prejudice to the right of the petitioner to proceed by action to enforce specific performance. On this record the only ground for refusing the order pursuant to § 2–169, W.S.1957 (now § 2–5–804, W.S.1977) is the unconscionability as found by the probate court.

■ The parties in presenting this case emphasized the increase in value of the property. We note that according to the

**2.** § *2–5–804*:

"If, after a full hearing upon the petition and objections, and examination of the facts and circumstances of the claim, the court or judge is satisfied that the petitioner is entitled to a conveyance of the real estate described in the petition, an order authorizing and directing the executor or administrator to execute a conveyance thereof to the petitioner must be made, entered on the journal of the court."

stipulated facts at the time the lease was made the fair market value of the property would not have exceeded $35,000. The option price as quoted above is $45,000. The fair market value of the property and related improvements and equipment at the time of the exercise of the option was $80,-000. The risk of the effects of· inflation, however, is inherent in any contract which includes an option to purchase in the future. Mere increase in the value of land does not invalidate a contract and provide justification for denying specific performance. *Bradford v. Plains Cotton Cooperative Association*, 539 F.2d 1249 (10th Cir. 1976); *Gordon v. Crown Central Petroleum Corp.*, 423 F.Supp. 58 (D.Ga.1976); *Humble Oil & Refining Company v. DeLoache*, 297 F.Supp. 647 (D.S.C.1969); *Cunningham v. Esso Standard Oil Company*, 35 Del.Ch. 371, 118 A.2d 611 (1955); *Imperial Refineries Corp. v. Morrissey*, 254 Iowa 934, 119 N.W.2d 872 (1963); *Shell Oil Co. v. Kapler*, 235 Minn. 292, 50 N.W.2d 707 (1951).

This court previously has manifested its reluctance to redraw contracts for the parties. In *Younglove v. Graham & Hill*, Wyo., 526 P.2d 689, 692 (1974), the court stated:

"However, after competent parties have solemnly contracted and agreed to certain conditions, courts should exercise restraint in nullifying the terms thereof or rewriting the contract. * * * "

We can detect no facts in the stipulation of the parties in this case which would justify the probate court, even in its discretion, in invalidating the contract. *Reed v. Wadsworth*, Wyo., 553 P.2d 1024 (1976). In the absence of overreaching, the court should not aid those who have made an unwise bargain in the formation of the contract. *Goodman v. Newzona Investment Co.*, 101 Ariz. 470, 421 P.2d 318 (1966); *Shell Oil Co. v. Kapler*, supra; *Gardner v. Meiling*, 280 Or. 665, 572 P.2d 1012 (1977).

Unconscionability is tested as of the time the agreement is made and not in accordance with hindsight. *Jamestown Farmers Elevator, Inc. v. General Mills, Inc.*, 413 F.Supp. 764 (D.N.D.1976); *W. L. May Co., Inc. v. Philco-Ford Corporation*,

273 Or. 701, 543 P.2d 283 (1975). It is considered as a form of fraud recognized in equity, but such fraud should be "apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; which are unequitable and unconscientious bargains." *Hume v. United States*, 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889). The Supreme Court of Oklahoma has defined the test of unconscionability as whether, "under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial needs of a particular case, clauses. are so one-sided as to oppress or unfairly surprise one of the parties." *Barnes v. Helfenbein*, Okl., 548 P.2d 1014, 1020 (1976). Other courts have indicated that in the context of the formation of the contract it is important to determine whether the Fredericks were deprived of meaningful choice as to whether to enter into the contract (*Gordon v. Crown Central Petroleum Corp.*, supra; *Williams v. Walker-Thomas Furniture Company*, 121 U.S. App.D.C. 315, 350 F.2d 445 (1965)); whether the Fredericks were compelled to accept the terms (*Jamestown Farmers Elevator, Inc. v. General Mills, Inc.*, supra); whether there was opportunity for meaningful negotiation (*Clinic Masters, Inc. v. District Court In and For County of El Paso, Colo.*, 556 P.2d 473 (1976)); and whether there was such gross inequality of bargaining power that negotiations were not possible for the aggrieved party, or whether the aggrieved party was underprivileged, uneducated or illiterate and the ·type of person easily deceived or taken advantage of, or whether the aggrieved party could comprehend and was aware of the agreement or was in some manner surprised by fine print or concealed terms (*Wille v. Southwestern Bell Telephone Company*, 219 Kan. 755, 549 P.2d 903 (1976)). The Fredericks, it is agreed, had the opportunity to consult with and did consult with counsel prior to entering into this lease, and in the absence of other fac-

tors which are not included in this record we must hold as a matter of law that there was no unconscionability in the contracting process. It is a rare situation in which a lessor can claim unconscionability because, since he owns the property, he need not enter into a lease at all. See *Manning v. Potomac Electric Power Company*, 230 Md. 415, 187 A.2d 468 (1963).

■ Turning to other grounds indicated by the probate court, a requirement to pay taxes, not assessments, does not make the contract unconscionable. *Montgomery Ward & Company, Inc. v. Annuity Board of Southern Baptist Convention*, 16 Wash.App. 439, 556 P.2d 552 (1976). The utilization of a printed form furnished by Standard Oil Company would not make the contract unconscionable or automatically a contract of adhesion. *Geldermann and Company, Inc. v. Lane Processing, Inc.*, 527 F.2d 571 (8th Cir. 1976); *Chandler v. Aero Mayflower Transit Company*, 374 F.2d 129 (4th Cir. 1967).

■ Similarly the other grounds specifically recited by the probate court including the right of assignment; the entitlement of the lessee to erect fixtures or other items; the right of the lessee to withdraw from and cancel the lease if it could not be used for the intended purpose or if the intended use were restrained or enjoined; the reserved right of first refusal according to paragraph 9 quoted above; and the generic context of the lease described by the probate court as being drawn very heavily in favor of the draftor, in this case the lessee and its assignee, do not serve to make this lease unconscionable. The court previously has refused to accept a claim that a contract was unconscionable for inadequacy of consideration simply because one of the parties was disappointed. *Laibly v. Halseth*, Wyo., 345 P.2d 796 (1959).

We therefore hold that this lease and the option to purchase could not, as a matter of law, be found unconscionable as the probate court did. That being the only ground for not entering the order provided for in § 2–5–804, we hold that the petitioner "is entitled to a conveyance of the real estate described in the petition." The case is reversed and remanded to the Probate Court for Campbell County for the entry of an order authorizing and directing the administratrix to execute a conveyance of these premises to Fulkerson and for the entry of such order on the journal of the court in accordance with law.

### OPINION OF THE COURT IN CASE NO. 5117

This action was filed in the District Court in and for Converse County as a protective measure following the entry of the judgment and order in Campbell County which was the subject of the appeal in Case No. 5029. The administratrix of the estate of Uber H. Frederick is a resident of Converse County, and this action for specific performance was brought there in reliance upon § 5–1–103, W.S.1977, which provides in substance that an action compelling specific performance of a contract to sell real estate may be brought in the county where any of the defendants reside.

A Motion to Dismiss was filed on behalf of the defendants asserting in substance that venue was improper in Converse County because of the location of the real property in Campbell County; the failure of the complaint to state a claim; and specifically the failure of the complaint to state a claim against the administratrix with respect to an alternative prayer for damages because of the failure to file a creditor's claim in the estate. In addition, the Motion to Dismiss invoked the concept of res judicata because of the alleged prior and full adjudication of the matter in the District Court in Campbell County. Following a hearing the Motion to Dismiss was granted by the District Court of Converse County, which accounts for the prompt appearance of this appeal on our docket.

The appellant in this case states four issues for review, which we paraphrase as follows:

1. Whether the order and judgment of the Probate Court in Campbell County is subject to collateral attack on the ground

that it exceeded its subject-matter jurisdiction in connection with the prior adjudication.

2. Whether the parties successfully conferred by stipulation subject-matter jurisdiction on the Probate Court in Campbell County so that the order and judgment did not go beyond the jurisdiction of that court.

3. Whether a claim against the estate should be required when a verified petition for specific performance was presented to the probate court in the estate proceeding, even though the district court action for specific performance includes an alternative claim for damages.

4. Whether a complaint for specific performance of a contract for the sale of real property presents a claim against individual defendants who are heirs of the deceased who agreed to convey the land.

We have spoken to the first two issues in our opinion in Case No. 5029 above. We need say no more other than to note the statutory preservation of an action to enforce specific performance if the petition for specific performance in the probate court is dismissed, all as found in § 2–5–806, W.S.1977. In our opinion in Case No. 5029 above the conclusion was reached that the Probate Court in Campbell County did exceed its jurisdiction despite the stipulation of the parties.

 Issues 3 and 4, of course, were not presented in Case No. 5029. Had the appellant known of our disposition of that case it is quite likely that this case never would have been filed. Once filed, had the District Court in Converse County known of our disposition of Case No. 5029 this action undoubtedly would have been dismissed as moot. While these issues are sharply drawn, no doubt significant, and somewhat intriguing, we conclude that they are illusory for adversarial purposes because of the mootness injected into this case by our disposition of Case No. 5029. Proper application of the principles of judicial restraint leads to the conclusion that we should not here address these issues because our opinion under the circumstances would be advisory only. *House v. Wyoming Highway Department*, 66 Wyo. 1, 203 P.2d 962 (1949); *Welch v. Town of Afton*, 64 Wyo. 49, 184 P.2d 593 (1947). Cf., *State ex rel. Schwartz v. Jones*, 61 Wyo. 350, 157 P.2d 993 (1945).

The foregoing authorities hold that our proper disposition in such circumstances is to dismiss the appeal, and it hereby is dismissed.