Raymond H. Vogel, Cape Girardeau, Mo., for plaintiff.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendants.

John Edwards, pro se.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff Biebel Bros., Inc. brought this action against the United States Postal Service ("Postal Service") and John Edwards ("Edwards"), the contractor of a set of repairs to the U.S. Post Office Building in Fredericktown, Missouri. Plaintiff, a subcontractor on the contract site, alleges Edwards did not pay him after completion of his repair work. Plaintiff seeks recovery from the Postal Service based on the Miller Act, 40 U.S.C. § 270a et seq. for failure to obtain a security bond, and under quantum meruit. The claims against Edwards are based on breach of contract and fraudulent misrepresentation.

On May 8, 1991, this Court ordered default judgment against defendant Edwards and entered judgment in favor of plaintiff in the amount of $25,461.00. On May 29, 1991, plaintiff filed a motion to require the defendant postal service to pay over escrow funds withheld from defendant Edwards. The Postal Service had already moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) & (6). The Postal Service argues that plaintiff's claims are preempted by the Contract Disputes Act ("CDA"), 41 U.S.C. § 601, *et seq.*, which preempts district court jurisdiction over contractor suits against the Postal Service. *See* 41 U.S.C. §§ 601(2), 602(a), 605(b).

 Judge Nangle considered this precise question in a related case brought by another subcontractor against Edwards and the Postal Service connected with the work at the Fredericktown Post Office. *Aaron Carroll v. United States Postal Service*, 764 F.Supp. 143 (E.D.Mo.1991).

Judge Nangle ruled that the CDA preempted subcontractor suits against the U.S. Postal Service. Therefore, the Court lacked subject matter jurisdiction to entertain the plaintiff's cause of action against defendant Postal Service and plaintiff's pendent claim against Edwards lacked an independent basis of federal jurisdiction. The entire case was dismissed for lack of subject matter jurisdiction.

 The same result must follow here. This Court has no subject matter jurisdiction over this cause of action. Plaintiff's suit against the Postal Service is barred by the CDA and plaintiff's pendent claim against Edwards lacks an independent basis of federal jurisdiction.

Accordingly, defendant's motion to dismiss will be granted and this cause of action will be dismissed for lack of subject matter jurisdiction. Plaintiff's motion to pay over escrow funds will be denied and the default judgment entered herein will be set aside for lack of subject matter jurisdiction.

The **GOLDEN REWARD MINING COMPANY, a joint venture comprised of United Coin Mines Limited, an Ontario, Canada corporation, Moruya Gold Mines of North America, Inc., a Nevada corporation, and Helix Mining Inc., a Delaware corporation, Plaintiffs,**

v.

**JERVIS B. WEBB COMPANY, a Michigan corporation, Defendant.**

No. Civ. 90–5130.

United States District Court, D. South Dakota, W.D.

Sept. 4, 1991.

Gregory A. Eiesland, Rapid City, S.D., Max Main, Belle Fourche, S.D., for plaintiffs.

Jerry C. Rachetto, Deadwood, S.D., James R. Buschmann, Detroit, Mich., Roger A. Tellinghuisen, Lead, S.D., for defendant.

## MEMORANDUM OPINION AND ORDER

BOGUE, Senior District Judge.

### Facts

On December 27, 1990, Golden Reward Mining Company filed a Complaint in three counts against the Jervis Webb Construction Company of Detroit, Michigan. The Complaint included counts in Negligence, Strict Liability, and Breach of Contract.

Initially, Webb delivered to Golden Reward—sometime in August 1989—a mobile reclaimer, pursuant to the terms of a contract, to be used in Golden Reward's heapleach mining process.[1] The reclaimer apparently was designed to perform spent-ore reclamation at a certain tonnage level, a level which Golden Reward alleges the reclaimer never reached. Golden Reward sought nearly identical damages under each count of the Complaint: economic loss and consequential damages. Because there was no personal injury—and because South Dakota does not recognize recovery of economic loss under theories of negligence and strict liability[2]—this Court on

---

1. According to Golden Reward's Statement of Material Facts, "[r]ather than using the regular method of dump trucks and front-end loaders to load and unload the leach pad, [the reclaimer] would automatically convey crushed ore to the leach pad, stack it, and after the ore had been leached and neutralized, automatically remove the ore and convey it to the spend ore depository." *See* Golden Reward Statement of Material Facts, p. 5, filed 3/15/91.

2. *See* Order dated April, 1991: "The majority of precedent holds, as a matter of law, that economic losses are not recoverable [under strict

April 19, 1991, dismissed at Summary Judgment Count I (Negligence) and Count II (Strict Liability) of Golden Reward's Complaint. Golden Reward's breach of contract claim is the only remaining theory of recovery.

### Procedure

Following this Court's order dismissing the first two counts of Golden Reward's Complaint, Webb petitioned this Court to reconsider its decision to allow Golden Reward to proceed with the breach of contract claim (Count III). In short, Webb argues that Golden Reward cannot recover consequential damages because such damages are specifically prohibited under the terms and conditions of the contract.[3]

Webb's petition for reconsideration reactivates Webb's earlier motion for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to relief at summary judgment only if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *Jane Doe A v. Special School Dist. of St. Louis County,* 682 F.Supp. 451 (E.D.Mo. 1988), citing *Poller v. Columbia Broadcasting, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

In determining whether judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists, this Court views the evidence presented based upon which party has the burden of proof within the underlying substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Recently, the Supreme Court noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Therefore, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita,* 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

### Decision

#### 1. Sufficient Evidence in the Record

■ Under South Dakota law, "consequential damages may be limited or excluded [by the warrantor] unless the limitation or exclusion is unconscionable." S.D. Codified Laws Ann. § 57A–2–719(3).[4] Further-

---

liability and negligence]," citing *Agristor Leasing v. Spindler,* 656 F.Supp. 653 (D.S.D.1987).

**3.** The express warranty to which both Webb and Golden Reward agreed reads as follows:

We warrant the equipment covered by this proposal ... to be free from defects in material and workmanship ... *Our obligation under this warranty is limited to repairing ... or furnishing a replacement for any part or correcting any workmanship,* which shall be demonstrated to our satisfaction to have been defective ...

We neither assume, nor authorize any other person to assume for us, any other liability in connection with the equipment or services

furnished under this proposal, including ... liability for *loss of production ... or profits* and liability for direct, *incidental,* indirect, special or *consequential damages* ... (emphasis added).

**4. Section 57A–2–719 provides:**

(1) Subject to the provisions of subsections (2) and (3) of this section and of § 57A–2–718 on liquidation and limitation of damages,

 (a) The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and

more, under § 57A–2–302(1),[5] the issue of unconscionability is a matter of law to be determined by the trial court. *Johnson v. John Deere*, 306 N.W.2d 231, 236 (S.D.1981). As a threshold procedural issue, however, each party must be given a reasonable opportunity to present evidence "as to [the contract's] commercial setting, purpose and effect to aid the Court in making the determination." § 57A–2–302(2).[6]

Although this Court contemplated holding a formal hearing on the matter, such an approach is not required under § 57A–2–302(2). Each party must simply "be afforded a reasonable opportunity to present evidence." *Herrick v. Monsanto Co.*, 874 F.2d 594, 597 (8th Cir.1989). As the Eighth Circuit concluded, citing 2 R. Anderson, *Anderson on the Uniform Commercial Code* § 2–302:95, at 476 (3d ed. 1982), "when all possible evidence is already in the record, a formal hearing on the issue of unconscionability is unnecessary." *Id.*

This Court is convinced that each party has been given more than adequate opportunity to make its record on this issue. Webb started the volley with a motion for reconsideration directed specifically at the issues of unconscionability and limitations on the recovery of consequential damages; Golden Reward responded with a resourceful argument proposing that consequential damages are recoverable in the absence of proof that excluding such [consequential] damages from the terms of the contract is unconscionable. *See Hartzell v. Justus Co., Inc.*, 693 F.2d 770 (8th Cir.1982).

This Court then held a hearing on the issue of whether or not Golden Reward must prove, as a matter of law, that limiting the recovery of consequential damages was unconscionable. *See Johnson*, 306 N.W.2d at 238. At that hearing, each party discussed the genesis of the contract negotiations; the negotiations involved in reaching an agreement; the problems which ultimately arose; and Webb's response to the alleged untimely and frequent breakdowns of the reclaimer. Finally, this Court ordered Golden Reward and Webb to brief thoroughly four (4) separate issues related to consequential damages and unconscionability in light of the facts of this case. *See* Order, dated July 29, 1991. In response, each party filed both an initial brief and a response brief. Thus, both parties have provided this Court with enough evidence to ensure that neither party will be prejudiced in the absence of a hearing.[7]

repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail to its essential purpose, remedy may be had as provided in this title.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

**5.** **Section 57A–2–302 provides:**

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to represent evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

**6.** The limitation of remedy provisions, which are specifically addressed by § 57A–2–719(3), are subject to the general unconscionability requirements prescribed in § 57A–2–302. *See Herrick v. Monsanto Co.*, 874 F.2d 594, 596 (8th Cir.1989). Thus, if consequential damages are limited pursuant to 57A–2–719(3), that limitation must be tested against 57A–2–302 to determine if such a limitation, within the factual context of the case, is unconscionable.

**7.** The Eighth Circuit provided direction in a case with nearly the same procedural posture. "Sufficient evidence exists on the record concerning commercial setting, purpose, and effect of the [limitation on consequential damages] clause to obviate the need for a hearing." *Herrick*, 874 F.2d at 597.

### 2. Unconscionability and Consequential Damages

■ This Court is presented with a single issue: Is the clause in the contract between Golden Reward and Webb Construction Co. which, in the event of breach, prohibits Golden Reward from recovering consequential damages, unconscionable as a matter of law? Given the commercial nature of the parties and the circumstances surrounding creation of the contract, this Court finds that the clause prohibiting recovery of consequential damages is not unconscionable.

Resolution of this issue turns on the analysis of two sections of South Dakota's version of the Uniform Commercial Code, namely SDCL 57A-2-302,[8] and SDCL 57A-2-719[9]. Thus, once a remedy provision within a contract "fail[s] of its essential purpose, [extra-contractual] remed[ies] may be had as provided in this title." *See* § 57A-2-719(2). The aggrieved party must prove, however, that the limitation on recovery of consequential damages [contained in the contract] is unconscionable before recovery of consequential damages is allowed.[10] As (3) [of § 57A-2-719] provides, "consequential damages may be lim-ited or excluded unless the limitation or exclusion is unconscionable." *See* 2-719(3).[11] By the terms of the contract, Golden Reward and Webb established that:

(1) The "repair and replacement" remedy provided in the agreement is the exclusive remedy. *See* Contract, and section 57A-2-719(1)(b).

(2) Consequential damages are excluded.[12]

Several issues are worth noting for purposes of clarification. First, we are discussing two separate, but necessarily related, legal issues. On the one hand, the contract [between Webb and Golden Reward] contains a provision which states, in effect, that the exclusive remedy available in the event of breach by Webb is "repair or replacement" of the defective component. In other words, if the reclaimer breaks down, Webb will fix it. Under South Dakota law, such a provision is entirely proper. As section 57A-2-719(1)(a) provides: "The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and *may limit or alter the measure of damages recoverable under this chapter, as payment of the price or to repair and replacement of nonconforming goods or parts.*"[13] [emphasis added].

---

**8.** Infra, note 4.

**9.** Infra, note 3.

**10.** Infra, note 5.

**11.** The first thing to note about subsection (3) [of 2-719] is that it is not the buyer's best friend: as the courts have recognized, the subsection explicitly authorized the contractual exclusion of consequential damages. Moreover, except in cases in which consumer goods cause personal injury, the buyer carries the burden of proving the unconscionability of the limitation-of-remedy clause. *See* White & Summers, *Uniform Commercial Code*, 2d Ed., p. 472.

**12.** Infra, n. 2; Whether a limitation on consequential damages is unconscionable is expressly made a question of law for determination by the Court. *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 444 F.2d 372 (2d Cir.1971).

**13.** *See also: In re Estate of Frederick*, 599 P.2d 550 (Wyo.1979), the Wyoming Supreme Court pointed out its "reluctance to redraw contracts for the parties." *Id.* at 556, and stated that "[i]n the absence of overreaching, the court should not aid those who have made an unwise bargain in the formation of the contract." *Id.* The Tenth Circuit reversed a Wyoming District Court's finding of unconscionability, and its failure to properly apply the *Frederick* analysis in determining unconscionability. Said the Tenth Circuit:

> The considerations set out in *Frederick* relevant to a determination of unconscionability are whether: 1) the protesting party was deprived of meaningful choice as to whether to enter into the contract; 2) the party was compelled to accept the terms; 3) there was opportunity for meaningful negotiation; and 4) there was gross inequality of bargaining power. *Id.* at 556. The burden is on the complaining party to "demonstrate that the clause in question was unconscionable at the time the contract was made." *W.L. May Co. v. Philco-Ford Corp.*, 273 Or. 701, 543 P.2d 283, 286 (1975).

*Kerr-McGee Corp. v. Northern Utilities, Inc.*, 673 F.2d 323, 329 (10th Cir.1982).

Second, not only does the contract contain an "exclusive remedy" provision, it also contains a "limitation of remedy" provision which prohibits recovery of consequential damages. This provision, like the "exclusive remedy" provision, is also proper under South Dakota law. As § 57A-2-719(3) states, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Thus, the real issue is not whether the "repair or replace" provision is (or was) unconscionable at the time the contract was created, but whether limiting consequential damages (and, in effect, limiting the scope of potential damages) was unconscionable at the time of the creation of the contract. *See Johnson*, 306 N.W.2d at 237–38.

As the South Dakota Supreme Court reasoned, separating these issues is important:

> Thus, although the repair and replacement warranty may have subsequently failed of its essential purpose, thereby entitling him to general damages for breach of contract as outlined in the code, the limitation on remedy was not unconscionable at the time the contract was made, either procedurally or substantively, and he would not be entitled to recover consequential damages.

*Johnson*, 306 N.W.2d at 238.

The "exclusive remedy" provision relates to whether or not the remedy provision provided in the contract failed of its essential purpose, and that is a fact issue for the jury. *See Johnson*, 306 N.W.2d at 237. The issue of whether or not the limitation on remedies [excluding consequential damages] is unconscionable is a question of law to be decided by the Court. *Id.* at 237–38. As the high court concluded, "[f]ailure of the warranty to fulfill its purpose is necessarily determined by circumstances occurring after the contract is made, whereas unconscionability is to be determined as of the making of the contract." *Id.* at 238.

Furthermore, the South Dakota Supreme Court concluded, as have most courts and commentators [*see* White & Summers, *Uniform Commercial Code*, 472–75, 2d ed. 1980], that "unconscionability" is much different when a commercial party is involved, as opposed to a lay consumer.[14] "As we have previously noted, the courts are much more inclined to sustain [a finding of unconscionability] in the case of the downtrodden consumer than they are in the case of the commercial consumer who presumably has a far more meaningful choice." *Johnson*, 306 N.W.2d at 238.[15]

14. Comment 1 [to 2-719(3)] suggests that a remedy limitation should be deleted on the grounds of unconscionability only when it fails to provide "minimum adequate remedies." White & Summers' hornbook on the UCC provides an instructive example of how the "2-719(3) analysis" works depending upon the status of the buyer—is the buyer a lay consumer or a commercial purchaser:

> Suppose Acme Motors sells a pick-up truck to a consumer, who plans to use it for fishing trips. The printed form sales contract contains a remedy limitation clause which provides that under no circumstances shall the buyer be entitled to consequential damages. The buyer suffers serious injuries when the truck exploded on the way home from the showroom. Unless Acme comes forward with evidence rebutting the presumption of unconscionability of the exclusion clause, the buyer may recover damages for his personal injuries. On the other hand, if the buyer had purchased the truck for delivering groceries from his store, and if the only injuries caused by the explosion were to the truck and to groceries on board, the buyer would have to prove that the exclusionary clause was unconscionable.

White & Summers, *Uniform Commercial Code*, 2d ed. 1980, p. 473.

15. "It is difficult to sum up the law on disclaimers, exclusion clauses, and unconscionability. We can say with confidence that a clause purporting to limit the buyer's damages or remedies is subject to attack as unconscionable under 2-719(3). Such attacks will probably only be successful (with rare exceptions) in consumer settings involving personal injuries. If the seller has made a disclaimer that complies with 2-316, it is not clear whether the buyer can attack it with 2-302. As a matter of statutory construction, one of us thinks disclaimers should be policed solely by 2-316, the other thinks 2-302 should be available at least for consumer buyers. It is clear that some courts will continue to invoke unconscionability as embodied in 2-302 and 2-719(3). *In light of the cases decided thus far, we suspect that whenever a consumer's blood is spilled, even wild horses could not stop a sympathetic court from plowing through the most artfully drafted and conspicuously printed disclaimer clause in order to grant relief. On the other hand, when the buyer is a merchant, no court should apply unconscionability of any variety to a disclaimer that complies with 2-316.* [emphasis added]

Golden Reward is neither a downtrodden consumer nor a small business suffering the ill effects of an adhesion contract.[16] Before an agreement was reached, Bateman Engineering [17] and Webb communicated with each other regarding proposed changes in the contract. Some of Webb's demands were met, others were not. Eventually, however, a contract was completed to which both parties agreed.[18]

The Ninth Circuit, in *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir.1990), addressed the fundamental problem Courts face when tempted to interfere with negotiated business transactions which have gone sour:

> Parties of relatively equal bargaining power negotiated an allocation of their risks of loss. Consequential damages were assigned to the buyer, Wilson. The machine was a complex piece of equipment designed for the buyer's purposes. The seller Smith did not ignore his obligation to repair, he simply was unable to perform it. This is not enough to require that the seller absorb losses the buyer plainly agreed to bear. Risk shifting is socially expensive and should not be undertaken in the absence of a good reason. An even better reason is required when to so shift is contrary to a contract freely negotiated. The default of the seller is not so total and fundamental as to require that its consequential damage limitation be expunged from the contract.

*Id.* at 708, citing *S.M. Wilson & Co. v. Smith Int'l., Inc.* 587 F.2d 1363, 1375 (9th Cir.1978).

The Ninth Circuit, in *Milgard,* went on to reason that the phrase "total and fundamental [default]" is not magical. The real issue is whether the breach by Webb caused a loss which was not part of the bargained-for allocation of risk.[19] *Id.* at 709.

With that in mind, Golden Reward provided arguments which are both resourceful and creative. This Court cannot imagine, however, that Golden Reward, as it contemplated the venture upon which it was about to embark, did not fully understand that a limitation on recovery of consequential damages was a necessary prerequisite to participation in the contract. Certainly, Webb would not consider build-

---

White & Summers, *Uniform Commercial Code,* 2d ed. 1980, p. 485.

**16.** In a contract for the sale of water pipe between two relatively sophisticated parties, a clause excluding liability for consequential damages was found to be unconscionable. *Construction Assoc. Inc. v. Fargo Water Equip. Co.,* 446 N.W.2d 237 (N.D.1989). In *Fargo Water,* however, the seller used its superior bargaining power to restrict any statement of the limitation of remedies to a pre-printed guide that was not available to buyers until after the sales contracts were finalized. This lack of negotiation, along with elements of unfair surprise, resulted in procedural unconscionability. Although Golden Reward conceded that the contract was not procedurally unconscionable, this Court cannot divorce itself entirely from the apparent arms-length bargaining which transpired between the parties before consummation of the contract.

**17.** Apparently, Bateman Engineering was Golden Reward's construction manager for the Golden Reward Project. Bateman's responsibilities included the negotiations for and purchase of the mobile reclaimer.

**18.** Correspondence contained in the record indicates that Golden Reward agreed to Webb's proposed warranty prohibiting recovery of consequential damages. *See* Letter, dated January 9, 1989, from Webb to Golden Reward in reference to *Paragraph 5 (Warranty):* "Seller shall not in any event be liable for incidental or consequential damages."

**19.** In *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703 (9th Cir.1990), the Ninth Circuit "agree[d] with the district court's decision to lift the cap on consequential damages." *Id.* at 709. Of particular concern to the Ninth Circuit were two issues not present in the case before this Court. First, "Selas did not make a completely open and honest effort to bring the furnace into compliance with the contract requirements." *Id.* at 709 n. 9. Second, the court questioned whether the ban on consequential damages was part of the bargained-for allocation of risk. *Id.* Although the Ninth Circuit indicated Selas's "good faith" was not dispositive of the appeal, it was nonetheless a factor present in *Milgard* and not present in this case. Regarding the "bargained-for" risk, this Court is convinced that both Webb and Golden Reward knew precisely the risk involved in this contract. Furthermore, despite labeling the issue as one of measuring the "allocation of risk," the Ninth Circuit in *Milgard* failed to provide any analysis to support its conclusion that the parties did not bargain at arms length for the ban on consequential damages.

ing this reclaimer if the reclaimer's potential breakdown might ultimately generate liability [for Webb] for an incalculable amount of gold.

Both parties realized, at the time of negotiations, that this was a prototypical machine, designed and built to achieve a production result heretofore unknown to both parties. No doubt, Golden Reward realized that to encourage successfully Webb's participation in this project, the fear of consequential damages in a volatile precious metals market must be removed. By the same token, Webb demanded only a warranty which encouraged innovation—without the fear of financial paralysis if projected, but yet untested, production goals were not met. A contract, under these circumstances, which omits a clause prohibiting the recovery of consequential damages would, perhaps, be more of a surprise than one which did not.

Golden Reward argues that the end result of the reclaimer's breakdown leaves Golden Reward with no remedy. This is not true. Golden Reward is still entitled to seek all other damage remedies available in the code.[20]

## CONCLUSION

Golden Reward and Webb Construction are large commercial entities which negotiated for the purchase of the subject reclaimer at arms length.[21] When the contract excluded recovery for consequential damages, both parties were aware of what this meant in the context of their agreement. The end result is no more or less oppressive than the parties perceived it to be. This Court will not interfere with what is simply a bargained-for allocation of risk.

The trilogy of *Celotex, Anderson,* and *Matsushita* provide this Court with a methodology for analyzing Defendant's motion for summary judgment. Under this trilogy, it is incumbent upon Plaintiffs, based

upon the showing set forth by Defendant, to come forward with specific facts demonstrating that there is a genuine issue in order to counter Defendant's summary judgment motion. *Cf. Women's Health of W. County v. Webster,* 871 F.2d 1377, 1383 n. 9 (8th Cir.1989). Plaintiffs have failed to meet this burden. Therefore, there being good cause appearing, it is hereby

ORDERED that Defendant's motion to dismiss Plaintiffs' claim for consequential damages within Count III (Breach of Contract) of Plaintiffs' Complaint is granted.

IT IS FURTHER ORDERED that this order has no force and effect as to Golden Reward's claim for general damages under Count III (Breach of Contract) of the complaint.

---

20. A necessary prerequisite to any recovery for breach of contract, other than that provided in the contract, is a determination by the finder of fact that the contract remedy failed of its essential purpose.

21. U.C.C. § 2–719(3) permits the limitation or exclusion of consequential damages unless the limitation or exclusion is "unconscionable," a situation rarely arising in a commercial context involving parties of equal bargaining power. *Lincoln Pulp & Paper Co., v. Dravo Corp.,* 436 F.Supp. 262 (D.C.Me.1977). "[F]indings of unconscionability should be rare in commercial settings." *White & Summers,* 474.