**PHILLIPS MACHINERY COMPANY, a corporation, Plaintiff,**

v.

**LeBLOND, INC., a corporation, Defendant.**

**No. 77–C–304–BT.**

United States District Court, N. D. Oklahoma.

July 29, 1980.

H. Richard Raskin, Tulsa, Okl., for plaintiff.

John M. Imel, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

BRETT, District Judge.

On February 12, 1973, the parties in this case entered into a Distributor Agreement whereby plaintiff, Phillips Machinery Company, Inc., became the distributor in Oklahoma for machine tools manufactured by

defendant, LeBlond, Inc. This agreement was cancelled in accordance with its terms by LeBlond on January 24, 1977. Following the cancellation, plaintiff commenced this action alleging breach of contract and seeking damages for lost profits and punitive damages. Defendant answered and counterclaimed for monies due on open account. By order of March 30, 1978, the Court granted summary judgment for defendant on its counterclaim. Thereafter, defendant filed a motion for summary judgment in which it asserted that Paragraph 7(a) of the agreement allowed it to terminate the agreement at will. By order of March 14, 1979, the Court ruled that the good faith requirements of the Oklahoma Uniform Commercial Code, Title 12A O.S. §§ 1–203, 1–201(17) and 2–103(1)(b), were applicable. The Court further found that there remained an issue of fact regarding the good faith or bad faith of defendant in cancelling the agreement and that summary judgment was, therefore, inappropriate.

Defendant has again moved for summary judgment on both the actual and punitive damages prayed for by plaintiff based on Paragraph 7(g) of the agreement which excludes damages for lost profits resulting from cancellation of the agreement, and upon Title 23 O.S. § 9. Upon reflection the Court believes the defendant's motion for summary judgment should be sustained because the consequential damage exclusion of the contract is enforceable and determined not to be unconscionable. The issues raised by defendant's motion and plaintiff's response are addressed separately below.

In its response, plaintiff first asserts that the previous denial of summary judgment is res judicata or the law of the case and bars any further motions for summary judgment. As authority for its assertion, plaintiff cites *Munson Line v. Green*, 6 F.R.D. 470 (S.D.N.Y.1947). In that case, the Court stated:

"The grounds for dismissal now urged could have been urged on the previous motion to dismiss. In my opinion on a motion to dismiss for insufficiency all the reasons for dismissal should be presented and any not presented should be treated as having been waived and not available on a later motion for summary judgment. Although I discover no case directly in point and although the situation is not directly covered by the Rules, it is certainly within their spirit, for they were 'designed to encourage the consolidation of motions and to discourage the dilatory device of making them in series.' *Thorne, Neale & Co. v. Coe*, D.C.D.C., 3 F.R.D. 259, 260.

"My conclusion also derives support from that portion of Rule 12(g) which provides that 'If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he should not thereafter make a motion based on any of the defenses or objections so omitted.' "

The Court then went on to conclude that "Whether or not the reasoning and conclusions I have adopted be sound, the circumstances here seem to me to show that this motion and Green's supporting affidavit are not presented in good faith but solely for the purpose of delay."

■ In this case, we are faced not with Rule 12 Motions to Dismiss but with motions for summary judgment under Rule 56. Further, the grounds for the two motions are not the same. In the first motion, defendant contended that Paragraph 7(a) of the agreement gave it an absolute right to terminate. In this second motion, defendant contends that, even if the right to terminate is not absolute, and even if defendant breached its duty of good faith, plaintiff still cannot recover the lost profits it seeks because the only damages sought are specifically excluded by the agreement. The Court within its discretion may timely review previous rulings on a motion for summary judgment.

■ While the previous order may well be the law of the case as to the question whether the good faith provisions of the Uniform Commercial Code apply, it does not bar further motion on a separate ground. *Lindsey v. Dayton-Hudson Corpo-*

*ration*, 592 F.2d 1118 (10th Cir. 1979); *A. M. Namirowski v. Nabisco, Inc.*, 421 F.Supp. 349 (D.C.1976). *Butterman v. Walston*, 50 F.R.D. 189 (D.C.Wis.1970) does not support plaintiff's contention since in that case the grounds for the two motions were the same.

■■■ Plaintiff next contends that defendant's challenge to the claim for exemplary damages cannot properly be raised in a motion for summary judgment, but that the proper method is a motion to strike under Rule 12(f), F.R.C.P. This contention has no merit. While the cases cited by plaintiff indicate that a motion to strike is a proper method for attacking a punitive damages claim, neither supports the proposition that a motion to strike is the exclusive method. Further, if there is any question of fact or law raised by the defense, a motion to strike is improper and the issue must be decided later on the merits when more information is available. *Myers v. Beckman*, 1 F.R.D. 99 (D.C.Okl.1940); *Gilbert v. Eli Lilly and Co.*, 56 F.R.D. 116 (D.C.Puerto Rico 1972).

Having determined that the motion for summary judgment may properly be used, the Court now turns to the merits of the motion. The first ground urged by defendant is that, even if it has breached the duty of good faith implied by the Uniform Commercial Code, the plaintiff is not entitled to recover damages for lost profits because such damages are excluded by Paragraph 7(g) of the Distributor Agreement, which provides:

"(g) Neither party shall by reason of cancellation of this Agreement, be liable to the other for compensation, reimbursement or damages either on account of present or prospective profits on sales or anticipated sales, or on account of expenditures, investments or commitments made in connection therewith, or in connection with the establishment, development or maintenance of the business or good will of the other or on account of any other cause or thing whatsoever; provided, however, that such cancellation shall not affect the rights or liabilities of the parties with respect to Machines pre-

viously sold hereunder or with respect to any indebtedness then owing by either party to the other."

Under the U.C.C., such exclusions are permitted by 12A O.S. § 2–719(3):

"(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Plaintiff contends that Paragraph 7(g) is unconscionable and cannot be enforced.

The section of the U.C.C. which deals with unconscionability is Title 12A O.S. § 2–302, and provides:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

When the issue of unconscionability was raised by plaintiff, this Court held a hearing in accordance with § 2–302(2) at which the parties were afforded an opportunity to present any evidence on the issue. At hearing, held February 7, 1980, the parties submitted for the Court's consideration a number of depositions and exhibits, as well as oral arguments and briefs. The evidence reveals that sometime during the latter part of 1972 or the early part of 1973, Mr. Robert Kohorst, Vice-President of defendant, came to Tulsa seeking a distributor for LeBlond machine tools. Using a list prepared beforehand and the Tulsa telephone

directory, Kohorst contacted several companies. In the course of making a number of telephone calls, Kohorst made contact with Richard Blake, who, in turn, contacted Howard Raskin, President of plaintiff, Phillips Machinery Company. Kohorst, Blake and Raskin met together and, after discussion, an oral agreement was entered into whereby Phillips would become distributor for LeBlond machine tools with the understanding the agreement would later be reduced to a formal written contract. In connection with this agreement, Phillips employed Blake to head up a new machine tool division and handle the LeBlond products.

On February 15, 1973, Kohorst sent to Raskin the formal agreement for signature. Neither Raskin nor Blake read the entire agreement before signing. Raskin did read the Schedule of Discount Rates and Schedule A. Raskin does not remember whether the contract was reviewed by counsel before it was signed, and recalls no conversations with anyone regarding the particular clause involved. In fact, there appears to have been no discussion of the clause between the parties at all. There is no contention that Raskin was misled or not given ample opportunity to read the agreement before signing.

The distributorship agreement consists of a cover page and approximately two and one-half letter size pages of printed material. Attached to the basic document are various schedules setting forth territory and discount rates as well as an additional page containing additional terms. The whole agreement consists of twelve pages, including the cover page. None of the parts of the agreement contain any fine print; on the other hand, none of the terms is conspicuous compared with the rest. All the printing is the same size and darkness.

As to Raskin's business experience, the evidence reveals he had been employed for 10 years by another company in sales of machine tools and other industrial products and had been president and owner of Phillips for a number of years. Prior to 1973, and since 1977, the company has been engaged primarily in handling lift trucks and related equipment. One of the primary reasons that LeBlond granted the distributorship to Phillips was Raskin's experience and ability as a business man.

The evidence further reveals that in the trade here involved, distributorships are the usual method by which manufacturers sell their products. Further, while limitations of damages clauses such as this one do not appear in all distributorship agreements, they are not uncommon. The purpose of such clauses is to protect both parties from having to pay lost profits in the event of termination, since either the manufacturer or distributor may decide to terminate and give their business to a competitor.

LeBlond, the manufacturer, is a larger entity than Phillips and its product is a very desirable one for a distributor to handle. However, the business is highly competitive and there are quite a number of companies that manufacture products comparable to and competitive with the LeBlond line.

The distributorship agreement was prepared by LeBlond. There is no evidence whether LeBlond would have been amenable to negotiating the contested paragraph if requested to do so.

Paragraph 7(g) applies to both the distributor and the manufacturer.

In at least one lease agreement, Phillips has a clause excluding claims of lost profits by its lessee.

■ The question of unconscionability is one of law for the Court to decide. The comments to § 2–302 state that the basic test is:

" . . . whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise (citation omitted) and not of disturbance of allocation of risks because of superior bargaining power."

■ This test is to be applied as of the time of formation of the contract.

■ The language of § 2–719(3) indicates that in deciding whether a clause excluding consequential damages is unconscionable, the Court must first determine whether the contract is between a consumer and a business entity, or a contract between businessmen. If the former, then limitations of consequential damages for injury to the person are prima facie unconscionable. However, if the loss is commercial, as in this case, there is no prima facie unconscionability. In fact, in a commercial setting, the burden of proving unconscionability is on the party seeking to invalidate the contract or clause. *W. L. May Co. v. Philco-Ford Corporation*, 273 Or. 701, 543 P.2d 283 (Or.1975); *Schroeder v. Fageol Motors, Inc.*, 86 Wash.2d 256, 544 P.2d 20 (1975).

The Court finds no Oklahoma case which addresses the precise question presented here. The case of *Tuttle v. Kelly-Springfield Tire Co.*, 585 P.2d 1116 (Okl.1978) involved a limitation of remedy in a consumer contract where the consumer-plaintiff suffered injury as a result of a blow-out on a tire purchased from defendant. The Court held, in accordance with § 2–719(3), that the limitation of consequential damages for injury to the person was prima facie unconscionable, and that the burden was on the defendant to overcome the presumption.

While the *Tuttle* holding involves a consumer transaction, there is dicta in the opinion that "remedy limitations for non-consumer goods would probably be tested for unconscionability in the same manner as disclaimers." However, in a footnote the Court indicated that whether the standards of § 2–316 would apply is "a question for another day."

This question was considered by the Supreme Court of Washington, *Schroeder v. Fageol Motors, Inc.*, 86 Wash.2d 256, 544 P.2d 20 (1975). That court reached the conclusion that the presence or absence of negotiation of an exclusionary term and conspicuousness or lack of it were factors to be considered along with others in determining whether such a clause is unconscion-

able. Citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C.Cir., 1965), the *Schroeder* court noted

". . . consideration must be given to 'all the circumstances surrounding the transaction,' including '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print . . .' "

The court then went on to state that also to be considered are prior course of dealings between the parties and usage of trade, and that the presence of a practice or policy excluding consequential damages would "support a finding of unconscionability in spite of lack of 'negotiations' or the 'inconspicuous' appearance of the clause."

Other courts have considered the question of unconscionability of clauses excluding lost profits in contracts between businessmen. In such cases, the courts generally examine the circumstances existing at the time the contract was made in the light of the general commercial background and the needs and practices of the particular trade involved. *W. L. May Co., Inc. v. Philco-Ford Corporation*, 273 Or. 701, 543 P.2d 283 (Or.1975). In *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F.Supp. 1300 (S.D.N.Y.1970), the court identified "typical" cases of unconscionability as "where one party has been misled as to the nature of the bargain, where there appears to have been a severe imbalance in bargaining power, or where specific terms appear 'outrageous.' "

■ There is no requirement that there be equality of bargaining power. The comments to § 2–302 make it clear that the section does not invalidate clauses simply because they allocate risks to the party having less bargaining power. There must be, in addition, some element of deception or substantive unfairness. *Wille v. Southwestern Bell Telephone Co.*, 219 Kan. 755, 549 P.2d 903 (1976).

■ In addition, in order to find such a clause unconscionable, the party challeng-

ing the clause must show that there is no reasonable relation to the risks involved and that the terms are so one-sided as to be oppressive. *W. L. May Co., Inc. v. Philco-Ford Corporation, supra.*

■ Careful consideration of the evidence in light of the applicable law convinces the Court that the plaintiff has failed to meet its burden of showing that Paragraph 7(g) of the agreement is unconscionable. There is no evidence that LeBlond abused its right to contract freely, and no evidence that the contract is "one-sided, oppressive and unfairly surprising." *Wille, supra.* Nor is there any evidence that the manner in which the contract was entered was oppressive or misleading. After the parties reached an oral agreement, LeBlond sent the written contract to Phillips, and Raskin had ample opportunity to read it and to raise any objections he may have had. The fact that he failed to read it, under these circumstances, does not relieve Phillips from its terms. *Bradford v. Plains Cotton Cooperative Association,* 539 F.2d 1249 (10th Cir. 1976). Further, Raskin is not a consumer, but an experienced businessman. The limitation has a reasonable relationship to the risks involved and is equally applicable to both parties. While it is true that the term was not "conspicuous" or "negotiated", neither was it hidden in fine print, and the few pages involved could have been easily read by a man of Mr. Raskin's business experience.

Plaintiff has argued that this clause cannot be enforced because it, in effect, deprives plaintiff of any effective remedy, and therefore the remedies provided by the contract fail of their essential purpose. The argument continues that the very reason for entering into such a contract is to make a profit, and therefore any exclusion of lost profits as a remedy for breach is unconscionable and contrary to public policy. This argument is unsound. The contract contains no limitation on damages other than lost profits. The fact that plaintiff does not claim other damages is immaterial. Further, the U.C.C. specifically provides for such exclusions, negating the public policy

argument. Such reasoning as set forth by plaintiff would leave § 2–719(3) without any effect by invalidating all such limitations between businessmen.

■ It is plaintiff's position that defendant's good faith or bad faith in terminating the contract is a factor that should be considered in determining whether this exclusionary clause is unconscionable. That position has some support in the case of *County Asphalt, Inc. v. Lewis Welding and Engineering Corp., supra.* However, it is important to distinguish between unconscionability in formation of a contract and a subsequent breach of the good faith obligation. In determining whether a clause authorized by § 2–719(3) is enforceable, the test is whether the clause or contract is unconscionable at the time of contracting. Subsequent events will not make a valid provision unconscionable. *Bradford v. Plains Cotton Cooperative Association, supra.* The good faith requirement, on the other hand, is "an implied term of the contract requiring cooperation on the part of one party to the contract so that another party will not be deprived of his reasonable expectations." *Corenswet, Inc. v. Amana Refrigeration, Inc.,* 594 F.2d 129 (5th Cir. 1979), citing Farnsworth, *Good Faith Performance and Commercial Reasonableness under the Uniform Commercial Code,* 30 U.Chi.L.Rev. 666 (1973). It follows, then, that a breach of the implied contract term will not invalidate the other terms of the contract. It should again be emphasized that this paragraph does not prevent plaintiff from asserting a breach of the contract or from recovering any actual damages except lost profits. Since the exclusionary clause is part of the contract and is not unconscionable, it is difficult to comprehend how enforcing the clause could deprive plaintiff of its reasonable expectations. By the terms of the contract, plaintiff cannot reasonably expect to recover lost profits.

■ In considering a motion for summary judgment, the Court must consider the evidence in the light most favorable to the non-moving party, and if there is any indication of a genuine issue as to any material

fact, summary judgment should not be granted. *Exnicious v. United States*, 563 F.2d 418 (10th Cir. 1977); *United States v. Kansas Gas and Electric Company*, 287 F.2d 601 (10th Cir. 1961). This does not mean, however, that the existence of any fact issue precludes the granting of summary judgment. Rather, summary judgment is inappropriate only if the fact issue is material. *British Airways Board v. Boeing Company*, 585 F.2d 946 (9th Cir. 1978). A fact issue is material if it may affect the outcome of the litigation. *Mutual Fund Investors v. Putnam Management Company, Inc.*, 553 F.2d 620 (9th Cir. 1977).

It is true in this case that a fact issue remains as to the good faith of defendant in terminating the distributor agreement. That fact issue, however, is not material. Under § 2–719(3) of the U.C.C., contractual exclusions of consequential damages are valid unless unconscionable. Unconscionability by the terms of § 2–302 is a question of law for the Court. Since the clause involved in this case is not unconscionable as a matter of law, the question of good faith of defendant is immaterial, since it cannot affect the outcome of the litigation. Even if defendant terminated the contract in bad faith, plaintiff cannot recover lost profits as damages.

Since the contract between these parties excludes damages for lost profits, the exclusion is not unconscionable, and the only actual damages sought are lost profits, the Court finds that defendant's motion for summary judgment should be granted.

The Court further finds that summary judgment should be granted defendant on plaintiff's claim for punitive damages. The availability of punitive damages is controlled by statute, *Title 23, O.S. § 9*, which provides:

> "In any action for the breach of an obligation *not* arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." (Emphasis supplied)

Since plaintiff's action is based on a breach of contract, punitive damages may not be awarded. Further, since there are no recoverable actual damages, there can be no recovery of punitive damages. *Moore v. Metropolitan Utilities Company*, 477 P.2d 692 (Okl.1970).

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is hereby granted. In keeping with this Memorandum Opinion, a separate judgment in favor of the defendant LeBlond, Inc., a corporation, and against the plaintiff, Phillips Machinery Company, a corporation, will be entered.