**STANLEY A. KLOPP, INC.**

v.

**JOHN DEERE COMPANY.**

Civ. A. No. 79–4217.

United States District Court,
E. D. Pennsylvania.

March 23, 1981.

William T. Adis, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for plaintiff.

James C. Rosenberg, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

The contract between the parties contains this clause:

> If the Dealer's period of appointment expires and no new Authorized Dealer Agreement is entered into or if such appointment is canceled for any reason, neither party shall be entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by the termination of the relationship, except as provided in this Agreement.

John Deere Agriculture Dealer Agreement cl. 4 (hereafter referred to as Dealer Agreement or the contract), Exhibit A to the Complaint and to defendant's motion for partial summary judgment. On defend-

ant's motion for partial summary judgment I held that if plaintiff established a right of recovery this clause would bar the use of lost profits as a measure of damages. *See Stanley A. Klopp, Inc. v. John Deere Co.,* (E.D.Pa. Huyett, J., 1980). Plaintiff seeks reconsideration.

Plaintiff Stanley A. Klopp, Inc. (Klopp) had been a John Deere authorized dealer since 1936. Complaint ¶ 8. The parties had annually executed a dealer franchise agreement. *Id.* ¶ 5. In 1965, the contract contained for the first time a clause which prohibited the recovery of lost profits. Affidavit of John C. Schuett, Exhibit B to defendant's motion for partial summary judgment. In 1972, insignificant language changes were made and the clause has appeared in all future contracts.[1]

The contract also contains the following clause relating to the termination of the franchise agreement by the company's failure to offer a new agreement:

It is intended that each succeeding year the Company will offer the Dealer a new Authorized Dealer Agreement if the Company believes that the Dealer's area of responsibility continues to afford sufficient sales potential to reasonably support an authorized dealer and that the Dealer has fulfilled the requirements of his appointment or has corrected or taken appropriate action toward correcting deficiencies in his operations which have been called to his attention by the Company. If, however, the Company determines that the Dealer's area of responsibility does not afford sufficient sales potential to continue to support an authorized dealer, or, if the Company believes the Dealer has not fulfilled the requirements of his appointment, it has the right to terminate its relationship with the Dealer by not offering to enter into such a new Agreement.

Dealer Agreement cl. 3. This same clause requires the company to give a dealer at least twelve months' notice of its intention not to offer the dealer a new contract. This clause applies only to the company. There is no accompanying duty on the part of the dealer to notify the company in advance of its intention not to accept. *Id.* In May, 1978 defendant John Deere Company (Deere) notified the plaintiff that it would not be offering Klopp a new contract in October of 1979. Complaint ¶ 10. Thus, Deere gave the plaintiff more than the twelve months' notice required by the contract. In October, 1978 defendant offered and plaintiff accepted what was to be the last contract between the parties. Plaintiff brought suit initially for injunctive relief but has since amended its complaint to demand money damages. *See* Amendment to Complaint, April 23, 1980.

1. *As a matter of law, is the clause in the Dealer Agreement barring the recovery of lost profits enforceable?*

■ In its response to defendant's partial summary judgment motion plaintiff argued, *inter alia*, that the no-lost-profits clause should not be enforced because it is an unconscionable clause, citing sections 2–302 and 2–719(3) of the Pennsylvania Uniform Commercial Code (UCC). 13 Pa.Cons. Stat.Ann. §§ 2302, 2719. Neither party has addressed the issue of whether the contract between these parties is within the purview of the sales article of the UCC, however, even if the UCC does not apply by its own terms, it represents a policy statement by the state legislature concerning good faith, as applicable to a franchise agreement as to a conventional article 2 contract for the sale of goods. *See Zapatha v. Dairy Mart Inc.,* —— Mass.App. ——, 408 N.E.2d 1370, 29 UCC Rep.Serv. 1121 (Sup.Judicial Ct.Mass. 1980). Therefore, the law developed under the Code's unconscionability standard is generally applicable here whether by its own force or by analogy.

■ The same cannot be said of the law developed to govern contracts between con-

---

1. The first limitation of liability clause provided: "If no new Agreement is entered into, neither party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by the termination of the relationship, except as provided in this Agreement." Affidavit of Schuett, *supra.*

sumers and businesspersons such as *Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445 (D.C.Cir.1965) cited by the plaintiff. These cases addressed the problem of contracts in which there had been no fraud or mistake but which unreasonably took advantage of the consumer's lack of sophistication, unfamiliarity with the consequences of contractual terms and need for the product or service offered for sale. The rules developed in the consumer cases are necessarily tied to the identity of the contracting parties. They involve considerations absent from cases involving contracts between commercial entities where the parties generally have sophisticated business judgment and familiarity with contract terms gleaned through repeated transactions. Although commercial contracts can be unenforceable in whole or in part for unconscionability, it would be improper to borrow, without differentiation, concepts developed to protect consumers and employ them in favor of one commercial party over another. A number of courts have recognized that, although it is possible, rarely will a commercial contract or term be found to be unconscionable. *See Phillips Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318, 323 (N.D.Okla.1980); *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 266 (E.D.Mich.1976); *W. L. May Co. v. Philco-Ford Corp.*, 543 P.2d 283, 286 (Or.1975); *K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390, 393 (1970). *See also* J. White & R. Summers, Uniform Commercial Code § 12–22, at 385–86 (1972). The general principles which follow are applied in light of this background.

■ Unconscionability is a question of law for the court. *See Phillips Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318 (N.D. Okla.1980), 13 Pa.Cons.Stat.Ann. § 2302. So long as no genuine issue of material fact exists, a court may conclude on a motion for summary judgment that as a matter of law a contract or a contract term is enforceable despite an allegation of unconscionability. *See Fleischmann Distilling Corporation v. Distillers Company Ltd.*, 395 F.Supp. 221 (S.D.N.Y.1975), Fed.R.Civ.P. 56.

■ Unconscionability is the rubric under which the judiciary may refuse to enforce unfair or oppressive contracts in the absence of fraud or illegality. Although the concept is not susceptible of precise definition, nonetheless some convenient formulations exist. Unconscionability may be expressed as the lack of meaningful choice coupled with a contract term which is so one-sided as to be oppressive. *See W. L. May Co., Inc. v. Philco-Ford Corp.*, 543 P.2d 283 (Or.S.Ct.1975). *See also* Restatement (Second) of Contracts § 234. The drafters of section 2–302 of the UCC explained that "[t]he principle is one of prevention of oppression and unfair surprise . . . and not of disturbance of allocation of risks because of superior bargaining power." UCC § 2–302 Comment 1 (citation omitted).

■ The avoidance of unfair surprise requires that the language of the clause be clear and precise. *See K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390, 393 (1970). The clause involved in this case, quoted at the outset, meets the clarity requirement. It would be difficult to imagine a more precise manner of stating the proposition. *Cf. Ebasco Services Inc. v. Pennsylvania Power and Light Co.*, 402 F.Supp. 421, 430 (E.D.Pa.1975). Furthermore, the language of the clause is not "one-sided." The limitation of liability could have been invoked by either party. As the *Phillips Machinery* court observed:

> [W]hile limitations of damages clauses such as this one do not appear in all distributorship agreements, they are not uncommon. The purpose of such clauses is to protect both parties from having to pay lost profits in the event of termination, since either the manufacturer or distributor may decide to terminate and give their business to a competitor.

494 F.Supp. at 322. The undisputed facts in this case reveal nothing to contradict this reading of the clause. The plaintiff has not directed my attention to anything in the record which would create a genuine issue of material fact with respect to the commercial reasonableness of the clause. Plaintiff has not referred me to any dis-

covery which relates to the commercial setting despite the fact that the discovery deadline had passed before this motion was filed and that plaintiff alleged in its complaint that the *termination* clause was unconscionable. I conclude that there are no allegations concerning the effect of the commercial setting on the reasonableness of the clause which would make summary judgment inappropriate.

 Plaintiff has contended that there was inequality of bargaining power between these parties, although it offers no affidavit or discovery evidence to put this in issue. Bargaining power is as much a function of market forces as it is of size. Therefore, a bare allegation of disparate size does not necessarily warrant an inference of disparate bargaining power. Nonetheless, accepting plaintiff's contention would not alter the outcome. Mere unequal bargaining power between contracting parties does not render their contracts unconscionable. *Phillips Machinery Co. v. LeBlond, Inc.*, 494 F.Supp. 318, 322 (N.D.Okla. 1980). Nor is negotiation necessary between experienced parties. *Id.* at 324. *See also Tacoma Boat Building Co. v. Delta Fishing Co.*, 28 UCC Rep.Serv. 26, 38 (W.D. Wash.1980), *K & C, Inc. v. Westinghouse*, 437 Pa. 303, 263 A.2d at 393. Thus, plaintiffs' allegation that the contract was not negotiated does not render it oppressive or unfair.

 Plaintiff has also alleged that when the contract was signed by its president, he did not read it because he believed "that the agreements were similar in substance to the Agricultural Dealer Agreement for the preceding year." Affidavit of Klopp and Keener, attached to plaintiff's response to defendant's motion for summary judgment. According to this affidavit, plaintiff followed this procedure and acted under this assumption from at least 1952. According to the defendant and undisputed by the plaintiff, the no-lost-profits clause was first added in 1965. The general rule is that absent an allegation of fraud or incompetence a person has a duty to read a contract before signing it and his failure to do so will not excuse his ignorance of its contents. *See Design & Development, Inc. v. Vibromatic Mfg., Inc.*, 58 F.R.D. 71, 73 (1973). Plaintiff has not alleged fraud or incompetence. It has alleged that the contract was signed in haste but this is not a justification for ignorance of the contents. *See Thrasher v. Rothrock*, 105 A.2d 600, 604 (1954). Plaintiff's position is even more untenable when it is recognized that since a no-lost-profits clause has been in the contract for thirteen years, by alleging ignorance of this term plaintiff is in fact alleging that it signed 13 contracts without reading them. The general rule which imposes a duty to read, the clear language used in the clause, and the plaintiffs' own neglect for thirteen years to inform itself lead me to conclude that as a matter of law the plaintiffs' lack of knowledge cannot be said to be an unfair surprise worked by the defendant.

 The undisputed facts show that the contract was signed on behalf of the plaintiff by a businessman with over forty years' experience. The business relationship between the plaintiff and the defendant was of equal duration. There are no genuine issues of material facts relating to the commercial setting. As a matter of law, I conclude that there was no procedural unfairness in the execution of the contract containing the clause. *See Tacoma Boat Building Co. v. Delta Fishing Co.*, 28 UCC Rep.Serv. at 31. The language of the clause is not one-sided and is clear and precise. It does not exculpate but rather limits the liability of both parties to the measures provided in the contract. It has appeared in substance in every annual contract since 1965. As a matter of law, based on the undisputed facts, I conclude that the clause is not substantively unconscionable. *See id.*

2. *Does the alleged wrongful termination of the franchise effect the enforceability of the clause limiting liability?*

The plaintiff has devoted much of its energy both in opposition to the original motion and in its motion for reconsideration

to arguing that the termination of plaintiff's dealer franchise was wrongful. Based on this the plaintiff argues first, that the limitation clause does not apply in the case of wrongful termination and in the alternative, that wrongful termination would vitiate the limitations clause.

 I reject plaintiff's first argument that the clause does not apply in the case of a breach of the agreement because that would render it meaningless. The plain language of the clause states in the event the parties' relationship ceases neither side will be entitled to lost profits. The plaintiff argues that the clause was intended only to make lost profits unavailable when the contract is terminated according to its terms. What the plaintiff's interpretation overlooks is that if the contract were terminated according to its terms, there would be no breach of contract. If there is no breach, there is no right to recover and if there is no right to recover, there is no exposure to limit. Plaintiff's interpretation reads the clause as simply stating the obvious, that is, if there is no breach, then there is no recovery. This defies common sense as well as the rules of contract interpretation. See 4 S. Williston, Contracts § 601, at 310 (3d ed. W. Jaeger 1961) (contracts should be construed so that no terms are rendered meaningless).

Plaintiff's second argument, that the termination was wrongful and this renders the limitation clause unenforceable, is similarly flawed. The question of whether the termination was wrongful depends upon events surrounding the notice of termination and the events which the parties contend precipitated the notice. Those facts are irrelevant to a determination of whether the limitations clause is unenforceable because it is unconscionable. The issue of unconscionability is to be determined as of the date the contract was made. See Phillips Machinery Co. v. LeBlond, Inc., 494 F.Supp. at 321, 323; 13 Pa.Const.Stat.Ann. § 2302; Restatement (Second) of Contracts § 234. The test is applied as of the time of contract formation. If the clause is not unconscionable at that time, a subsequent breach cannot effect it. Because I have concluded that the clause was not unconscionable at the time it was made, I reject as irrelevant *on the issue of the enforceability of this clause* the plaintiff's allegations and arguments relating to the propriety or impropriety of the termination. Accordingly, I adhere to my earlier ruling and shall deny plaintiff's motion.