936 F.2d 578
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 JACK ROWE ASSOCIATES, INC., Rowe Marketing International,
Inc., Plaintiffs-Appellees,
v.
SANYO FISHER (USA) CORPORATION, Defendant-Appellant.
 No. 89-55140.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 12, 1990.
Decided June 25, 1991.
 Before FLETCHER, BOOCHEVER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Fisher Corporation ("Fisher") appeals from a jury verdict entered against it in this breach of contract action. The jury awarded appellees Jack Rowe Associates ("Associates") and Rowe Marketing International ("International") $5,943,820 in damages for Fisher's breach of contract. This court has jurisdiction over Fisher's timely appeal pursuant to 28 U.S.C. Sec. 1291 (1988). This is a diversity action in which California law controls. We AFFIRM.
 
 BACKGROUND
 
 3
 Associates and International are business entities wholly owned by Jack Rowe. In 1976, Fisher and Associates entered a written contract under which Associates agreed to act as a sales representative for Fisher products. In 1978, Fisher and International entered an oral contract under which International agreed to act as a distributor for Fisher products. These business relationships continued until 1982, when by letter, Fisher terminated the agreement with Associates. Although the letter did not mention International, its relationship with Fisher also ended during this time period.
 
 
 4
 In 1984, Associates and International filed a diversity action against Fisher. Their complaint, consisting of three cause of action, alleged that Fisher had improperly terminated their contracts. The first cause of action was promissory estoppel, based on alleged promises made by Fisher of a long-term relationship. The second cause was breach of the covenant of good faith and fair dealing, based on alleged commercial bribes tendered to Fisher by the successors of Associates and International. The third cause was breach of contract, alleging that oral representations made by Fisher at the beginning of the contractual relationships established that the relationships would only be terminated for poor performance, and that Fisher terminated Associates and International for some reason other than poor performance. On July 9, 1986, the district court granted summary judgment in favor of Fisher on all three causes of action.
 
 
 5
 On appeal, this court affirmed summary judgment on the first two causes of action and reversed on the third cause, breach of contract. Jack Rowe Associates v. Fisher Corp., 833 F.2d 177 (9th Cir.1987) ("Fisher I "). This court held that 1) the parol evidence rule did not bar admission of evidence indicating that Fisher had made assurances to Associates that its written contract would only be terminated for good cause, and 2) based on the parol evidence, a genuine issue of material fact existed as to whether Associates' and International's contracts with Fisher could be interpreted as imposing a requirement of good cause for termination. Id. at 181-83.
 
 
 6
 On remand, Fisher made a pretrial motion for summary judgment which was denied by the district court. The case went to trial, and after the close of evidence Fisher made a motion for a directed verdict which was denied by the district court. By special verdict, the jury found that 1) both Associates and International had been terminated by Fisher, 2) both Associates and International had agreed with Fisher that their contracts would be terminated only for poor performance, and 3) Fisher had terminated Associates and International for some reason other than poor performance. Based on its finding that Fisher had breached the agreements, the jury awarded damages to Associates and International collectively in the amount of $5,943,820. This appeal followed.
 
 DISCUSSION
 I. EVIDENTIARY ISSUES
 
 7
 A district court's evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988) (citing Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986)); Jauregui v. Glendale, 852 F.2d 1128, 1132 (9th Cir.1988).
 
 
 8
 Evidence of "Commercial Bribery"
 
 
 9
 Fisher argues that the district court erred in admitting appellees' evidence that David Karron, the Fisher manager who terminated Associates, received payments from the two entities that succeeded Associates and International as Fisher's sales representative and distributor (the "consulting fee evidence").
 
 
 10
 Fisher first contends that the law of the case doctrine bars appellees' use of the consulting fee evidence. In Fisher I this court addressed briefly appellees' claim, in the second original cause of action, that Fisher breached an implied covenant of good faith and fair dealing by discharging appellees because a rival distributor offered an economic incentive to Karron. Fisher I, 833 F.2d at 182. This court affirmed the district court's summary judgment on that issue in favor of Fisher because it found that appellees' allegation that its successors displaced appellees by bribing Karron was "unsupported by affidavit, documentary evidence or offer of proof." Id.
 
 
 11
 However, the evidence that the appellees offered at trial was substantially different from the evidence upon which they opposed summary judgment on the second cause of action in Fisher I. In their opposition to Fisher I 's summary judgment motion, appellees supported the allegation of bribery by relying exclusively on: (1) Jack Rowe's affidavit stating that Texas Sales & Marketing ("TSM") and International Sales had succeeded Associates and International, respectively; and (2) David Karron's answers in deposition testimony that he owned Fivent, Inc., and that a Fivent cash receipt analysis from 1/15/82 to 2/24/82 listed monies received from International Sales.
 
 
 12
 At trial appellees substantially expanded on these bare allegations in support of their breach of contract claim. Appellees called Charlie Balderas, owner of TSM, who testified that both he and his cousin Hank Balderas, owner of International Sales, conveyed to Karron a one-third profit interest in their businesses in exchange for "consulting" services from Karron, and to "share his good fortune." Appellees also called Karron, who testified that from September 1982 to July 1985 his company Fivent received some $150,000 from Charlie Balderas, TSM, and International Sales. Karron also testified that he delayed the appointment of TSM as Associates' successor in part because of a desire to avoid litigation with Jack Rowe.
 
 
 13
 Because the evidence presented at trial differs substantially from the evidence submitted in opposition to Fisher's summary judgment motion in Fisher I, we find that the law of the case did not bar appellee's introduction of the consulting fee evidence at trial. See United States v. Layton, 855 F.2d 1388, 1403 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989) (citing United States v. Houser, 804 F.2d 565, 568 (9th Cir.1986)).
 
 
 14
 Fisher next argues that the consulting fee evidence was irrelevant and therefore should have been excluded. Fisher reasons that because the only issue at trial was whether appellees performed poorly, Karron's secret motivations for terminating Associates were irrelevant. We disagree. Karron's motivations were directly relevant to Fisher's reasons for terminating the appellees. If Karron, acting as the representative of Fisher, terminated the appellees for reasons wholly independent from their performance under the contracts, a finder of fact would be justified in determining that the appellees were terminated for some reason other than poor performance.[1]
 
 
 15
 Fisher argues that the consulting fee evidence was unduly prejudicial. Where the prejudicial effect of evidence substantially outweighs its relevance, the evidence may be excluded. Fed.R.Evid. 403. However, we conclude that the district court did not abuse its discretion in admitting the consulting fee evidence. Although it likely had some prejudicial effect, in the context of the case, the consulting fee evidence's relevance was significant enough to warrant its admission.
 
 Exhibit 315
 
 16
 Fisher argues that the district court erred by excluding the admission of Exhibit 315 at trial. Exhibit 315 is an internal memorandum from Rowe's bank indicating that Rowe was liquidating International's assets in an attempt to repay International's debt to the bank. Fisher argues that this memo constituted a business record admissible as an exception to the hearsay rule under Fed.R.Evid. 803(6).
 
 
 17
 In order for a memorandum to be admitted pursuant to Fed.R.Evid. 803(6), the offering party must lay the proper evidentiary foundation. See Miller v. Fairchild Indus. Inc., 885 F.2d 498, 514-15 (9th Cir.1989), cert. denied, 110 S.Ct. 1524 (1990). In the instant case, Fisher offered no foundation that the bank memorandum was of the type routinely prepared by the bank in the normal course of business. Because this vital foundation was not presented, the district court did not abuse its discretion in excluding the memorandum as hearsay.
 
 Howard Ladd's Statements
 
 18
 Fisher contends that the district court erred in admitting Jack Rowe's testimony that: (1) as Sanyo's president in the early 1970s, Howard Ladd assured him over a period of time that as long as Rowe performed well, their relationship would continue on a long-term basis because of Rowe's large commitment of resources to the distribution of Sanyo products; and (2) as Fisher's president in 1979, Ladd told Rowe that he would receive the same contractual deal from Fisher as he had from Sanyo. Fisher argues that these statements are inadmissible hearsay. Fed.R.Evid. 801(c), 802.
 
 
 19
 Rowe's testimony concerning Ladd's 1979 statement was properly admitted. Fed.R.Evid. 801(d)(2)(A) indicates that a statement offered against a party which is "the party's own statement in either an individual or a representative capacity" is not hearsay. The instant testimony falls squarely within this rule. The disputed 1979 statements were made by Fisher, a party, through its representative, Ladd. Therefore, the district court did not abuse its discretion in admitting the 1979 testimony.
 
 
 20
 Further, Rowe's testimony concerning Ladd's early 1970's assurances, made while Ladd was a representative of Sanyo, is admissible. Fed.R.Evid. 801(d)(2)(B) indicates that a statement offered against a party which the party "has manifested an adoption or belief in" is not hearsay. Ladd, in making the 1979 statement as a representative of Fisher, referenced his own earlier statements and thereby adopted them. The testimony is therefore not hearsay and the district court was within its discretion in admitting it.
 
 Evidence of International's Inventory
 
 21
 Fisher claims that the district court erred in admitting evidence related to International's inventory. The evidence consisted of: (1) Rowe's testimony that in September 1982 Rowe informed Fisher that he was experiencing heavy losses in Mexico and suggested that Fisher either buy back part of his current inventory or allow him to liquidate it to other distributors in the United States; (2) Rowe's testimony that Fisher declined to accept his suggestions; (3) Rowe's testimony that Fisher encouraged Rowe to maintain a supportive atmosphere by continuing to extend credit to dealers in Mexico, consigning goods to customers, non-aggressively seeking to collect past due accounts, and eschewing repossession efforts; and (4) Rowe's testimony that by acting in accordance with Fisher's suggestions, his companies suffered further losses.
 
 
 22
 Fisher argues that this evidence was irrelevant to any issues at trial as Fisher had no obligation to buy inventory back from International. However, the evidence was relevant to whether International relied upon Fisher's alleged assurances of a long-term relationship by overextending credit to delinquent customers, and whether International's losses were incurred as a result of poor performance. Thus, the district court did not abuse its discretion in admitting the evidence.
 
 Expert Testimony on Damages
 
 23
 Fisher contends that the district court abused its discretion by admitting the expert testimony of Barry Ben-Zion, the appellees' economist. Fisher argued at trial that (1) Ben-Zion manipulated appellees' revenues by 300%, (2) Ben-Zion's projections were wildly speculative, and (3) Ben-Zion's cost projections were irresponsible. In response to these complaints, the district court conducted a lengthy voir dire of Ben-Zion and concluded that he was competent to testify as an expert economist.
 
 
 24
 A district court has broad discretion in admitting expert testimony, and its decision to admit an expert's testimony will be affirmed unless "manifestly erroneous". Taylor v. Burlington N.R.R. Co., 787 F.2d 1309, 1315 (9th Cir.1986). We find no manifest error in the instant case. The district court carefully questioned Ben-Zion before allowing him to testify, and based on what it learned, the court was within its discretion to allow his testimony.
 
 II. SUMMARY JUDGMENT
 
 25
 Fisher contends that the district court erred by denying its motion for summary judgment against Associates. This court reviews a district court's denial of a motion for summary judgment de novo. Lockary v. Kayfetz, 908 F.2d 543, 545 (9th Cir.1990). Summary judgment is only proper if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and if the law dictates judgment for the moving party. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Fisher's motion for summary judgment was based on paragraphs 3(i)[2] and 12[3] of Associates' contract. Fisher argues that these contract provisions preclude any recovery of damages by Associates for termination of the contract. In response, Associates contends that this issue is barred by the law of the case doctrine, and alternatively, that the provisions do not preclude recovery for a wrongful termination of the contract by Fisher.
 
 
 26
 We first address Associates' law of the case argument. Associates appears to offer alternative grounds for asserting that Fisher I precluded Fisher from seeking summary judgment on paragraphs 3(i) and 12. First, Associates argues that Fisher's claim based on the contract terms is barred because it could have been raised in Fisher I. For support, Associates cites Munoz v. County of Imperial, 667 F.2d 811 (9th Cir.), cert. denied, 459 U.S. 825 (1982), which does not stand for the proposition that Fisher could not seek summary judgment on different grounds after this court's opinion in Fisher I. Munoz deals solely with issues which could have been raised on prior appeal. We find no authority for the position advanced by Associates.
 
 
 27
 Second, Associates argues that the issues involving contract paragraphs 3(i) and 12 were decided by implication in Fisher I and are therefore law of the case. It is true that "[t]he doctrine of law of the case 'encompasses a court's explicit decisions as well as those issues decided by necessary implications.' " Eichman v. Fotomat Corp., 871 F.2d 784, 791 (9th Cir.1989) (quoting Williamsburg Wax Museum v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C.Cir.1987)). We find, however, that Fisher I, which focused exclusively on paragraph 11 of Associates' contract, did not implicitly decide the proper interpretation of paragraphs 3(i) and 12 such that Fisher was incapable of seeking summary judgment on the paragraphs on remand. While, as explained below, the paragraphs are related, because they deal with a different subject (damages) than paragraph 11, we view the interpretation of these paragraphs as an independent question.
 
 
 28
 Because the law of the case does not bar Fisher from seeking summary judgment on the contract's damage provisions, we now consider the interpretation of those provisions. This issue centers on the interpretation of the word "termination" in paragraph 3(i) and "terminated" in paragraph 12. These words have two possible meanings--either termination for any reason or termination only for poor performance.
 
 
 29
 In Fisher I, this court held that a material issue of fact existed regarding the presence of a poor performance requirement for termination. At trial, the jury was allowed to use parol evidence in determining that Associates' contract was terminable only for poor performance. The jury's conclusion was an interpretation of paragraph 11 of the contract, which contains the contract's central termination terms.[4] To the extent that the contract's other provisions use the terms "termination" or "terminated", we believe that they must adopt the meaning established in paragraph 11.
 
 
 30
 We conclude that Fisher was not entitled to summary judgment based on paragraphs 3(i) and 12. Because the words "termination" in paragraph 3(i) and "terminated" in paragraph 12 refer to terminations according to the terms of paragraph 11, and because the interpretation of paragraph 11 was an issue of fact for the jury to decide, there was a material issue of fact with regards to the interpretation of paragraphs 3(i) and 12.[5] The district court was therefore correct in denying Fisher's motion for summary judgment. Paragraphs 3(i) and 12 are correctly interpreted as applying only to terminations pursuant to the terms of paragraph 11, as interpreted by the jury.
 
 III. DIRECTED VERDICT/JNOV
 
 31
 Fisher argues that the district court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. This court reviews the district court's ruling on a motion for a directed verdict under the same standard as a motion for JNOV. Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). This court's role is the same as the district court's role: JNOV is proper if, without accounting for the credibility of the witnesses, the court finds that the evidence and its inferences, considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion--that the moving party is entitled to judgment notwithstanding the verdict. Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988).
 
 
 32
 Sufficiency of Evidence of Good Cause Agreement
 
 
 33
 Fisher contends that the district court erred in denying its motions for a directed verdict and JNOV because the jury could not, from the evidence presented, have reasonably concluded that the parties agreed to terminate only for poor performance. Appellees' evidence consisted primarily of Jack Rowe's testimony regarding Ladd's assurances as a representative of Fisher. To contradict Rowe's testimony, Ladd testified at trial and denied making any assurances to Rowe of a long-term relationship between Fisher and Associates.
 
 
 34
 As the testimony of Rowe and Ladd indicate, the factual elements of the good cause issue were in conflict. The jury is charged with reaching a conclusion, and although the jury in this case could have come to a different result, we find its conclusion that the contracts were terminable only for poor performance to be reasonable from the evidence presented.
 
 
 35
 Sufficiency of Evidence of the Termination of International
 
 
 36
 Fisher implicitly attacks the district court's denial of its motions for directed verdict and JNOV on the ground that the evidence was insufficient to establish that Fisher terminated International. Fisher characterizes appellees' evidence as showing that Fisher withheld credit from International, that Fisher changed International's dealer discounts, and that Fisher refused to return Jack Rowe's phone calls. However, appellees also produced evidence that (1) in the face of the Mexican peso devaluation in early 1982, Fisher had "frozen" domestic accounts on the border--that is, that Fisher would not ship products to distributors unless the products were paid for in advance, (2) despite Fisher's freezing of these accounts, Fisher urged Rowe in March 1982 not to freeze his accounts with his Mexican customers, and to maintain a supportive atmosphere with his Mexican customers by extending further credit, (3) Rowe had a meeting with Ladd in September 1982 where Ladd refused to buy back $500,000 worth of Fisher products already shipped to International and demanded that International pay the $500,000 in full, stating that its losses would be made up when the market restructured, (4) Fisher denied Rowe's request to sell portions of his inventory to retailer dealers in the United States where Sanyo had lines of electronic products, and (5) Fisher refused to allow Rowe to sell inventory in other Fisher representatives' territories in the United States.
 
 
 37
 Again, although there were several possible conclusions that a jury could reach from this evidence, a reasonable jury could have determined that Fisher terminated International. The evidence could reasonably be interpreted as indicating that Fisher forced International out of the contractual relationship by placing it in an impossible business situation not provided for in the contract.
 
 
 38
 Equitable Estoppel and the Statute of Frauds
 
 
 39
 Fisher claims that International's oral contract is unenforceable under the California statute of frauds. Cal.Civ.Code Sec. 1624. The district court determined that Fisher was estopped from asserting the statute of frauds as a defense. In California, where "unconscionable injury would result from denying enforcement of the oral contract after one party has been induced by the other seriously to change his position in reliance on the contract," the inducing party is equitably estopped from asserting the statute of frauds as a defense. Isaac v. A & B Loan Company, Inc., 201 Cal.App.3d 307, 313 (1988) (citing Monarco v. LoGreco, 35 Cal.2d 621, 623-24 (1950)).
 
 
 40
 The district court determined that International had relied to its detriment on its agreement with Fisher and that therefore Fisher was estopped from asserting the statute of frauds. This determination is a mixed question of law and fact which we review de novo. United States v. McConney, 728 F.2d 1195, 1202 (9th Cir.), cert. denied, 469 U.S. 824 (1984). After reviewing the record, we find that the district court was correct. There is sufficient evidence that International was substantially relying on its contract with Fisher by extending itself financially. To allow Fisher to avoid its contract with International would result in unconscionable injury to International. Therefore, under California law, Fisher is estopped from raising the statute of frauds as a defense and International's oral agreement with Fisher is an enforceable contract.[6]
 
 Sufficiency of Good Performance Evidence
 
 41
 Fisher contends that the evidence was insufficient to support the conclusion that appellees performed well under the contract. However, Fisher ignores the fact that the special verdict form did not require the jury to find that appellees performed well under the contract. The form asked that the jury decide only whether Fisher terminated appellees for poor performance, and the jury concluded that Fisher had not. Because the issue before the jury was limited to the issue of appellees' poor performance, Fisher's contention is inapposite.
 
 Foreseeable Damages
 
 42
 Fisher argues, based on paragraph 11 of Associates' contract, that Associates was only capable of recovering damages for the thirty-day period immediately following the contract's termination. It contends that because paragraph 11 allowed for termination by thirty-days' notice, foreseeable damages can only be calculated for that period of time.
 
 
 43
 Fisher relies on Martin v. U-Haul Co. of Fresno, 204 Cal.App.3d 396 (1988). In Martin, the plaintiff sought to recover breach of contract damages based on a contract which allowed for termination by either party on thirty-days' notice. The court held that under California law, damages beyond the thirty-day termination period were unforeseeable and therefore not recoverable. Id. at 406-10.
 
 
 44
 While at first glance Martin would seem to control the instant case, we do not believe that it does. It is clear to us that the Martin court announced a rule applicable only to parties "who agree that a contract may be terminated for any reason, or no reason." Id. at 409. In announcing its thirty-day rule, the court relied on the fact that the plaintiff was aware that the defendant could terminate the contract on thirty-days' notice for any reason. While this rationale conflicts with the jury's interpretation of the contract's provisions, id. at 406, we are convinced that the court was announcing a limited rule.
 
 
 45
 Our refusal to apply Martin in the instant case is consistent with California contract damage law as well as the jury's factual determinations. In California, contract damages are awarded "to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." Id. at 409 (quoting Coughlin v. Blair, 41 Cal.2d 587, 603 (1953)); see also, Bravo v. Buelow, 168 Cal.App.3d 208, 215 (1985). The jury in the instant case found 1) that Fisher and Associates had contracted to permit termination only in the event of poor performance, and 2) that Fisher had breached that contract. To limit Associates' recovery to thirty-days' damages would restrict California's general recovery principles and render meaningless the jury's conclusions. We do not believe that the parties, by including in the contract a thirty-day termination period, intended to contract around California's recovery principles. We therefore hold that Associates was capable of recovering damages beyond the thirty-day termination period provided for in paragraph 11 of its contract.
 
 IV. MISCELLANEOUS
 Special Verdict Question 1
 
 46
 Fisher contends that the district court erred in propounding special verdict question number one which asked "Did Fisher and Jack Rowe Associates agree that under the 1979 written agreement Fisher could terminate the relationship only for poor performance?" We find no error with the formulation of the question.
 
 Bifurcation of Appellees' Claims
 
 47
 Fisher also argues that the district court abused its discretion in denying Fisher's motion to bifurcate Associates' claim from International's claim. The district court denied Fisher's motion on the ground that it was untimely. We agree with the district court. Fisher made this request in mid-trial after the court ruled that the consultation fee evidence was admissible. Although Fisher contends that it moved before trial to bifurcate International and Associates' claims, the record does not support its contention.[7]
 
 Combined Evidence of Appellees' Damages
 
 48
 Fisher argues that the district court erred in allowing the appellees to prove their damages collectively. The appellees' damages expert, Barry Ben-Zion, combined the expenses and revenues of International and Associates for the purpose of estimating their damages. Ben-Zion testified that the books of the two entities were commingled and as a result he could not accurately separate out each entity's expenses and revenues. Rockell Hankin, testifying for Fisher, admitted on cross-examination that he agreed with Ben-Zion's conclusion that it was impossible to separate the operating expenses of Associates and International.
 
 
 49
 The district court found, on the basis of this evidence, that the assets and expenses of Associates and International were commingled such that separation was difficult. We find no error with the district court's conclusion. Further, we do not perceive any prejudice to Fisher in allowing a collective damage determination; the jury concluded that Fisher was liable for the damages of both Associates and International and we have determined 1) that the damage limitation provisions in Associates' contract do not control, and 2) that the statute of frauds does not preclude the enforcement of International's oral contract.
 
 Thirteen-Year Damages Projection
 
 50
 Fisher contests the 13-year projection upon which Ben-Zion estimated damages. Ben-Zion apparently calculated damages for 13 years based on the assumption that Rowe, as sole shareholder in Associates and International, would retire at age 65. Fisher expressly declined at trial to object to the 13-year projection. The district court instructed the jury to find damages for the period that the jury concluded the contract would reasonably have continued. The jury's acceptance of Ben-Zion's damages estimate indicates that it concluded that the contract would have continued 13 years.
 
 
 51
 As we have discussed, the district court, within its discretion, allowed Ben-Zion to testify as an expert. We find no legal error with his 13-year estimate for the life of the contract. Fisher had an opportunity to question Ben-Zion's estimate at trial, but it declined to provide the jury with an alternate projection.
 
 CONCLUSION
 
 52
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Although this case involves a substantial sum of money, and close and difficult issues, we find it is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3 because it does not establish, alter, modify, or clarify a rule of law or fall within any of the criteria for publication cited in Cir.R. 36-2
 
 
 [1]
 The consulting fee evidence was additionally relevant to Fisher's claims that: (1) Fisher did not terminate International; (2) Karron did not participate in Fisher's alleged termination of International; (3) Karron was not responsible for managing International's relationship with Fisher; and (4) Karron did not participate in the decision to appoint the appellees' successors
 
 
 [2]
 Paragraph 3(i) reads in pertinent part:
 After termination by either party of this Sales Representative Agreement ... FISHER will pay you commissions on all written purchase orders which you have secured and have submitted to FISHER ... prior to the effective date of termination.... You do hereby expressly agree that FISHER shall be released and discharged, on any such termination, of any and all obligations to you other than the obligations just specified....
 
 
 [3]
 Paragraph 12 reads in pertinent part:
 In the event this Agreement is terminated by either party, FISHER shall not be liable to you ... for compensation, reimbursement or damages on account of loss of prospective profits on anticipated sales or on account of expenditures, investments, leases or commitments in connection with the business or goodwill of FISHER or you, or otherwise.
 
 
 [4]
 Paragraph 11 reads in pertinent part:
 The term of this agreement shall commence thereupon and continue until terminated by either party by thirty (30) days' written notice ...
 
 
 [5]
 We are aware that interpreting paragraphs 3(i) and 12 to be applicable only to good cause terminations is somewhat troublesome. See Klopp v. John Deere Co., 510 F.Supp. 807, 812 (E.D.Pa.1981), aff'd, 676 F.2d 688 (3rd Cir.1982) (interpreting agreement's provision that limits damages resulting from termination as applying only to terminations in accord with the agreement's terms renders the provision meaningless because it states the obvious--if terminated according to terms then no breach and no damages). However, given the interplay between paragraphs 3(i), 11, and 12, we are convinced that a material issue of fact existed. Any other conclusion would render meaningless the jury's reasonable interpretation of paragraph 11
 
 
 [6]
 Fisher argues that California law does not allow a plaintiff to recover lost profits under a theory of equitable estoppel. However, Fisher cites no California authority for this proposition. The Restatement of Contracts states only that "the remedy granted for breach is to be limited as justice requires." Restatement (Second) of Contracts Sec. 139. Given the jury's determination about the long-term nature of the contract, we find no error with the jury's damage award
 
 
 [7]
 The record shows only that before trial Fisher moved to bifurcate the issues--liability and damages--not the claims